In the Matter of the Judicial Settlement of the Account of Proceedings of FIRST CITIZENS BANK AND TRUST COMPANY OF UTICA, as Testamentary Trustee under the Last Will and Testament of LYDIA SMITH BENTON, Deceased, of the Trust Created Herein for the Benefit of FRANCES DIXON MAYNARD.*

ONEIDA NATIONAL BANK AND TRUST COMPANY OF UTICA, Appellant; FIRST CITIZENS BANK AND TRUST COMPANY OF UTICA and Others, Respondents.

Fourth Department, March 12, 1935.

* Revg. 149 Misc. 377. See *post*, p. 883.

*Bradley Fuller*, for the appellant.

*William L. Burke*, special guardian of the respondent Lydia Jean Maynard.

*Samuel Willig* [*I. Arthur Willig* of counsel], for the respondent Jack Estes.

TAYLOR, J.   Lydia Smith Benton died October 14, 1928, leaving a will dated April 24, 1928, which was admitted to probate October 17, 1928.   Her heirs at law and next of kin were Frances Dixon Maynard, a granddaughter (child of a deceased daughter), and Charles Babcock Benton, a grandson, and Elizabeth Benton Merritt, a granddaughter, the only children of Fred Benton, a deceased son.   The testatrix also left her surviving Lydia Jean Maynard, a great granddaughter (only child of Frances Dixon Maynard), and Charles Butts Benton and Patricia Benton, great grandchildren, the only children of Charles Babcock Benton.

The will of Lydia Smith Benton made explicit provision for her three grandchildren and her three great grandchildren.   In paragraphs second and fifth outright bequests of $40,000 and $10,000 are made to Charles Babcock Benton and Elizabeth Benton Merritt, respectively, and in paragraph eighth a legacy of the whole residuary estate is made to Frances Dixon Maynard.   Paragraphs sixth and seventh provide for bequests in trust for the support and maintenance of the three great grandchildren during their minorities and for the payment of the principal to them upon reaching their respective majorities.   The last mentioned paragraphs are the

only ones which make specific provision for the great grandchildren. Nowhere else in the will are they mentioned.

On April 2, 1932, Frances D. Maynard assigned to the Oneida National Bank and Trust Company of Utica, N. Y., all her right, title and interest in the estate of Lydia Smith Benton under paragraphs third and seventh of her will, as collateral security for her indebtedness to the said trust company. She died January 26, 1933, leaving a last will and testament dated January 17, 1933, which was duly admitted to probate May 3, 1933. This will left everything to her infant daughter Lydia.

The sole question raised by this appeal relates to the proper construction of paragraph third of the Benton will, which reads as follows:

" *Third.* I give and bequeath to First Bank and Trust Company of Utica the sum of $30,000.00, in trust nevertheless and for the following purposes: To keep said sum legally invested and to pay the income therefrom, at least each six months, to my granddaughter, Mrs. Frances Dixon Maynard, until she attains the age of thirty-five years, and then to pay to said granddaughter the principal of said trust fund and any accumulated unpaid income. Should my said granddaughter die before she attain said age of thirty-five years leaving no issue her surviving, then and in that event said trust fund and any unpaid income shall be paid in equal shares to my other grandchildren then surviving."

The decree of the surrogate adjudged that Lydia Jean Maynard was entitled to the entire corpus of this trust fund as a legatee by implication and directed the trustee to pay it over to her general guardian. From this decree the Oneida National Bank and Trust Company of Utica, assignee of Frances Dixon Maynard, has appealed.

Paragraphs third and fourth should be read together. The language is practically identical down to a certain point, namely: " I give and bequeath to First Bank and Trust Company of Utica the sum of $30,000.00, in trust nevertheless and for the following purposes: To keep said sum legally invested and to pay the income therefrom, at least each six months, to my granddaughter [naming her] until she attains the age of thirty-five years."

At this point we encounter similarities and dissimilarities. The income from the share of Frances under paragraph third was to be paid to her until she reached the age of thirty-five years, at which time she was to receive the principal sum. The income from the share of Elizabeth, under paragraph fourth, was to be paid to her until she reached the age of thirty-five years; if she had no child at that time, the income was thereafter to be paid to her for life or

until she had issue. Upon the birth of issue she was to receive the principal; otherwise, it was to go to the other grandchildren. In the case of Frances the principal sum was to be paid to her absolutely upon her attaining the age of thirty-five years, subject only to a single contingency (which did not occur), viz., her death before reaching that age leaving no issue her surviving; but in the case of Elizabeth the principal sum was never to be paid to her, either at the age of thirty-five or at any other time, unless and until she had issue. She could possess and enjoy the principal of her share only in the event that she gave birth to a child. As to the respective remainders over it should be noted that (1) in case Frances died before reaching thirty-five leaving no issue her surviving, and (2) in case Elizabeth died either before or after reaching thirty-five leaving no issue her surviving, the said principal sums were to be paid to the other surviving grandchildren. Under no circumstances (so far as the will itself directly states) were the remainders to be paid to the great grandchildren, or any of them. At the time the will was made, Elizabeth was without issue, but Frances was the mother of a girl (Lydia Jean) two years and three months old. This girl, by the way, was named after her great grandmother. Had Frances lived she would have become thirty-five in 1937, nine years after the will was executed.

The testatrix remembered and provided for all of her descendants, but her granddaughter Frances was her favorite and the chief object of her bounty. She received the entire residuary estate amounting to about $100,000. She is also the contingent remainderman of a fund of $10,000 under paragraph seventh and a principal legatee of $30,000 under paragraph third. No other legatee was so generously remembered. Her daughter Lydia was likewise favored over the two other great grandchildren. The trust fund for Lydia, $10,000, was equal to the combined trust funds set aside for the two other great grandchildren. The marked predilection for Frances as against Elizabeth is shown in the third and fourth paragraphs. In preparing those paragraphs it would seem that one dominant thought of the testatrix was the perpetuation of the family through the motherhood of her two granddaughters. She evidently believed that the corpus of those trust funds should go to those who were bringing children into the world. Elizabeth had no children and it was provided that the corpus of her share should never vest in her unless and until she had issue. The provision as to Frances was different, for the reason that Frances, besides being her favorite grandchild, was already a mother. In the mind of the testatrix Frances had already earned her legacy because she had given birth to a child. Of course the vesting of the corpus of the

$30,000 fund in Frances was not absolute, for the legacy would be divested if Frances should die under thirty-five leaving no issue. However, the fact that there may be a later divesting does not prevent a vesting within the meaning of the statute. (*New York Life Ins. & Trust Co.* v. *Winthrop*, 237 N. Y. 93, 103; *Matter of Watson*, 262 id. 284.)

As has been suggested, it may be that in establishing the trust fund for Frances the testatrix intended to throw out an " anchor to windward." It may be that the testatrix realized the possibility that the residuary estate might dwindle or disappear and that " in this event she provided the trust fund of $30,000 to be paid over to Frances Dixon Maynard when she had attained the mature age of thirty-five years, when time and experience had ripened her judgment." But such provision is quite consistent with a purpose to vest the trust fund in Frances immediately, payment only being postponed. It is argued that an immediate vesting could not have been intended for the reason that by such construction Frances would be enabled at once to realize on the trust fund by assignment and thus defeat the purpose of its creation. But this argument ignores the actual situation, for there is nothing in the will to indicate that the testatrix had doubts as to Frances' good business judgment or intended or tried to limit or hamper her in any way save in the one matter of postponement of payment of the $30,000 legacy until her thirty-fifth birthday. The testatrix must have intended that Frances' legacies be paid absolutely, for so reads her will. Paragraphs third and fourth, read together, disclose a definite purpose to vest title without any undue delay in the grandchildren who had become or who might thereafter become mothers. The theory that this fund was established in order that in case of need it might be applied for the benefit of Frances' surviving child or children seems to be conjectural and at variance with the wording of the paragraph and all the surrounding circumstances.

It is entirely probable that the testatrix expected that ultimately the issue of Frances and Elizabeth (if they died leaving issue) would enjoy the legacies bequeathed by the third and fourth paragraphs. In the natural course of events such issue would come into possession of the property by bequest or distribution. As pointed out, however, under no stated circumstances whatsoever were the remainders in question directed to be paid over to great grandchildren. We find no evidence in or dehors the will indicating an intent on the part of the testatrix herself to bequeath such legacies to such issue.

Upon the state of facts outlined and the inferences reasonably to be deduced therefrom it seems that by the third paragraph of her

will the testatrix intended to make a gift of $30,000 to Frances, the same to vest upon the death of the testatrix and that the time of payment alone was postponed. To be sure there are no words of immediate gift in either paragraphs third or fourth except to the trustee. And as stated in the opinion in *Matter of Crane* (164 N. Y. at p. 76): "Where the only words of gift are found in the direction to divide or pay at a future time the gift is future, not immediate; contingent and not vested." However, as stated in the opinion in *Goebel* v. *Wolf* (113 N. Y. at p. 412): "But the rule invoked, as others of like character, is subordinate to the primary canon of construction, that the construction shall follow the intent, to be collected from the whole will; and that the intention of the testator, so ascertained, must prevail; and that general rules, adopted by the courts in aid of the interpretation of wills, must give way when on a consideration of the scheme of the will, or of special clauses or provisions, their application in the particular case would defeat the intention." (See, also, *Matter of Crane, supra*, 77; *Smith* v. *Edwards*, 88 N. Y. 92, 103, 106; *Whitwell* v. *Whitwell*, 146 App. Div. 270; *Staples* v. *Mead*, 152 id. 745; *Matter of Jarvis*, 152 Misc. 252, 260, 261.)

The gift of $30 000 was " severed *instanter* " (*Warner* v. *Durant*, 76 N. Y. 133, 136) from the general estate for the benefit of Frances; it was specifically to be paid to her when she attained the age of thirty-five years; and in the meantime the interest on the trust fund was to be paid to her. She was over twenty-six years of age when the will was executed, was the favorite grandchild of the testatrix and had a daughter two years and three months old named Lydia for her great grandmother. All this, with the other considerations mentioned, indicated an intent on the part of the testatrix that Frances should have a vested interest in the principal of this trust fund and was to wait until the day fixed, her thirty-fifth birthday, simply for the receipt of the principal sum. We regard the following cases as authority for this view: *Warner* v. *Durant* (76 N. Y. 133, 136); *Matter of Tienken* (131 id. 391); *Campbell* v. *Stokes* (142 id. 23); *Bowditch* v. *Ayrault* (138 id. 222); *Matter of Young* (145 id. 535); *Matter of Brown* (154 id. 313). If the testatrix had omitted the concluding sentence of paragraph third the case would be on all fours with the *Warner* case. But this concluding sentence does not change the situation for the reason that the one contingency therein mentioned which would defeat the legacy, to wit, the death of Frances before reaching the age of thirty-five years leaving no issue surviving, did not occur. (*Campbell* v. *Stokes, supra*, 23, 29; *Stringer* v. *Young*, 191 N. Y. 157, 162.)

We are referred to the case of *Lewisohn* v. *Henry* (179 N. Y. 352) as requiring an affirmance of the decree here on appeal. That case, like the one at bar, dealt with separate trusts and when the *cestuis* arrived at certain ages the trustees were directed to " convey, transfer, deliver and pay over " to them portions of the corpus " in fee simple and absolutely." In view of this language and for other reasons, it was held that the share of one daughter did not vest in her before her death. The difference in the situation presented in the instant case is readily perceptible.

If it can be held that there was no gift of the corpus to Frances by virtue of the language used in paragraph third it must follow that the corpus was not effectively disposed of at all under the said paragraph and hence that it fell into the residuary estate. Intestacy will not be presumed. " There is a struggle always to avoid intestacy." (*Waterman* v. *N. Y. Life Ins. & Trust Co.*, 237 N. Y. 293, 300.) There is no indication in the will that the testatrix contemplated intestacy as to any of her property and a construction should be adopted to meet the testamentary purpose. (*Lamb* v. *Lamb*, 131 N. Y. 227, 234; *Wright* v. *Wright*, 225 id. 329, 340.) There was a direction to pay over the corpus (1) if Frances reached the age of thirty-five years and (2) if she died under that age leaving no issue. There was no attempt to dispose of the corpus if Frances died under thirty-five leaving issue, and that contingency is the one which actually happened. If it be assumed, then, that the *Warner* case is not in point, the trust fund in question must be held to have vested in Frances under the residuary clause of the will. (*Lamb* v. *Lamb, supra; Matter of Kohler*, 231 N. Y. 353, 374.) Under either theory, therefore, title to the corpus was vested in the estate of Frances Dixon Maynard when the testatrix died.

The learned surrogate held that there was a gift by implication to Lydia Jean Maynard under the third paragraph of the will, and cited in support of such holding *Close* v. *Farmers' Loan & Trust Co.* (195 N. Y. 92); *Matter of Hoffman* (201 id. 247) and *Matter of Moore* (152 id. 602). It would hardly be profitable to review these cases. They were decided upon their own peculiar facts and circumstances. The general principle underlying gifts by implication is stated as follows: " To uphold a legacy by implication, the inference from the will of the [testator's] intention must be such as to leave no hesitation in the mind of the court and to permit of no other reasonable inference." (*Bradhurst* v. *Field*, 135 N. Y. 564.) " To devise an estate by implication there must be so strong a probability of such an intention that the contrary cannot be supposed." (*Post* v. *Hover*, 33 N. Y. 593.) (*Dreyer* v. *Reisman*, 202 id. 476, 481.)

That a reasonable inference against a devise by implication to the great granddaughter Lydia can be drawn from this will goes without saying.

The decree of the surrogate should be reversed upon the law and the matter remitted to the Surrogate's Court of Oneida county for the entry of a decree in accordance with this opinion, viz., to the effect that the corpus of the trust fund in question vested in Frances Dixon Maynard upon the death of the testatrix.

All concur, SEARS, P. J., and THOMPSON, J., in result only. Present — SEARS, P. J., TAYLOR, THOMPSON, CROSBY and LEWIS, JJ.

Decree so far as appealed from reversed on the law, with costs to the appellant payable out of the estate, and matter remitted to the Surrogate's Court to enter decree in accordance with the opinion.