In the Matter of the Estate of WILLIAM F. HARADON, Deceased.

Surrogate's Court, Bronx County, April 22, 1940.

*Burlingham, Veeder, Clark & Hupper* [*David G. Ashton* and *Edward L. Smith* of counsel], for the petitioner.

*Leonard J. Reynolds* [*John B. Fitzpatrick* of counsel], for the respondents.

HENDERSON, S. In this proceeding for the appointment of an administrator with the will annexed it is necessary to construe the following portions of the decedent's will:

" *Sixth.* All the rest, residue and remainder of my estate, both real and personal, of which I die seized or possessed or to which I may be entitled, I give, devise and bequeath unto my Executrix and trustee hereinafter named, in trust nevertheless, to collect the rents and income thereof, to pay all legitimate charges against my estate not otherwise provided for and to dispose of and apply my said residuary estate in the manner and for the purposes stated in this my will.

" *Seventh.* I hereby authorize and direct my said Executrix and trustee to pay the net income of my residuary estate to Frances E. Miner so long as she shall remain unmarried. In the event that the said Frances E. Miner marries or at the time of her death then I authorize and direct my Executrix and trustee or her successor to divide my said residuary estate among and to pay the same over to Edna C. Rogers and her children then living, as a class, share and share alike.

" *Eighth.* I hereby nominate, constitute and appoint the said Frances E. Miner, * * * to be Executrix and Trustee of this my Last Will and Testament, * * *."

The above-quoted language is preceded by a provision for the care of the testator's burial plot and bequests of two general legacies, aggregating $6,000, which have been paid in full, to the legatees who are not related to the testator.

The matter has been submitted upon an agreed state of facts. The decedent was born in 1831, made his last will on January 30, 1912, and died a resident of this county on November 1, 1919, leaving a gross estate appraised by the transfer tax appraiser at $30,255.25, of which $9,755.25 was personalty.

The testator was married in 1863. His wife died prior to the execution of his will. His nearest blood relatives, both at the

date of his will and at the time of his death, were a first cousin and two sons of a first cousin who had died in 1909. The surviving first cousin died intestate, a resident of Kings county, in 1933, leaving as his only distributee a son who has been appointed administrator of his estate.

Frances E. Miner and Edna C. Rogers (*nee* Edna C. Miner) were nieces of the testator's wife, daughters of her brother. Miss Miner never married and died without issue on December 11, 1938. Mrs. Rogers died intestate a resident of Connecticut on April 12, 1933. Her only children were born prior to the date of decedent's will. They were a son who died unmarried and without issue on September 7, 1903, a daughter who died unmarried and without issue on April 25, 1933, and another son who died on March 14, 1935, leaving a widow and two children who are all living. At the date of the will and also at the date of the testator's death Mrs. Rogers and her two children then living resided in Connecticut.

When the testator made his will and also when he died Mrs. Miner lived in his home. She was regularly employed by an insurance company and was not dependent upon him. Her sister, Mrs. Rogers, lived in the testator's home for a time prior to her marriage and prior to 1883.

The petitioner is the ancillary administrator of Mrs. Rogers' estate and claims a prior right to administer the unadministered property in this estate on the ground that Mrs. Rogers was the sole residuary legatee thereof.

In addition to empowering his " executrix and trustee " to sell his realty and personalty and to invest and reinvest the proceeds of his residuary estate, he provided for the invasion of the residuary principal as follows:

" *Ninth.* Hereinbefore I have limited to Frances E. Miner dur-during her unmarried life the net income of my residuary estate, but it is my will that in the event that it is found by my said Executrix and Trustee that such income is inadequate to support and maintain her in periods of sickness or of incapacity or unemployment, that a portion of the principal of said residuary estate be used for such purposes and said Executrix and Trustee shall not be held to account for the same by any person."

It is apparent that the testator intended to devote his entire residuary estate to his wife's nieces who had been members of his household for varying periods, with the resultant disinheritance of his cousins, and to the married niece's children who might survive her sister's death or earlier marriage. He also expressed his preference for the sister who was still in the household when his will was drawn. However, if she married, the attempted trust would terminate and what was left of the residuary estate would go

to her married sister and the latter's children then living. Legal effect may not be given to the testator's intention to create a trust with the sole beneficiary thereof as its sole trustee. Instead, Miss Miner received a legal estate in the residuary for her life or until her earlier marriage. (Real Prop. Law, § 92.)

It is obvious that the testator intended by the use of the words " then living " in the seventh paragraph to refer to the date of Miss Miner's death or of her earlier marriage. The question is whether the words modify and limit " her children " only or were also intended by the testator to affect his preceding provision for Mrs. Rogers.

The will was apparently drawn with considerable care by a person of intelligence. It is to be assumed that the testator used language in its natural sense and with ordinary grammatical construction. If the testator had intended to condition his benefaction for the named beneficiary upon her surviving the trust, the natural, ordinary and grammatical language would have been " to Edna C. Rogers, if then living, and her children then living." He did not say so, and to include Edna C. Rogers among those whose gifts depended upon survivorship of the trust could only follow a resort to an awkward and ungrammatical application of his language or to an unwarrantable testamentary fabrication by inserting the appropriate words for the testator. (*Matter of Meyer*, 162 Misc. 426, 427.) Careless use of language should not be imputed to a testator who took care to direct his " executrix and trustee or her successor " to act after the termination of her beneficial interest, either by her marriage when she could complete the administration, or by her death when she could no longer act. I hold that the testator did not intend to refer to Mrs. Rogers when he used the words " then living," nor to condition his gift to her upon her surviving her sister.

The words " as a class " were apparently used by the testator with reference to " her children then living," intending thereby to further express his separation of the remainder gifts between the named beneficiary and the designated class. By such language he stresses his intention to constitute Mrs. Rogers a tenant in common with a class whose members until their death prior to the death of the life tenant were joint tenants as among themselves during the life tenancy. (See *Matter of Russell*, 168 N. Y. 169; Real Prop. Law, § 66.)

There is no gift over and no words of survivorship are directly connected with the gift to Mrs. Rogers. To apply his subsequent language to her gift would strain grammatical rules of parsing and syntax and cut down a plain gift of a vested interest to a named beneficiary by later phrases which have, at most, doubtful reference to such gift. Such a result would violate the long-established rule

to the contrary. (*Washbon* v. *Cope*, 144 N. Y. 287, 297; *Trask* v. *Sturges*, 170 id. 482, 492.)

The testator intended to give the remainder of his residuary estate to Mrs. Rogers and such of her children as survived Miss Miner, in equal shares. He intended his limitation of survivorship to apply only to the children of Mrs. Rogers. As all of her children died prior to Miss Miner's death, the remainder which had vested in Mrs. Rogers at the testator's death was not divested in any part and such remainder is payable to her ancillary administrator.

He intended to vest the entire remainder in Mrs. Rogers, subject only to such divestment therefrom as might be measured by the number of her children who were living at the death of Miss Miner.

At the testator's death there were three persons in being, Mrs. Rogers and her two children then living, who would have an immediate right to possession of the property on the determination of the only intermediate estate, Miss Miner's life estate. Mrs. Rogers' future estate, therefore, was vested (Real Prop. Law, § 40), subject to being divested in whole or in part by invasions authorized by the testator, and in part only by one or more of her children, including those born during the life tenancy, surviving Miss Miner. (*Matter of Chalmers*, 238 App. Div. 672, 675; affd., 264 N. Y. 239.) Mrs. Rogers died before the life tenant and never came into actual possession of the remainder. That fact, however, has no effect upon her vested interest nor upon the rights of her estate. (*Matter of Chalmers*, 264 N. Y. 239, 247, affg. 238 App. Div. 672, 675; *United States Trust Co.* v. *Taylor*, 193 id. 153, 156; affd., 232 N. Y. 609; *Matter of Benton*, 244 App. Div. 56, 60; affd., 269 N. Y. 579.)

Construction pursuant to the so-called " divide and pay over " rule has been urged. But this rule, like other canons of construction, is applicable only when testamentary intent cannot otherwise be ascertained. It is merely an aid in the search for the testator's intent and should not be used to pervert or nullify such intent. (*Matter of Tienken*, 131 N. Y. 391, 409; *Fulton Trust Co.* v. *Phillips*, 218 id. 573, 583.)

The testator's intent is clearly ascertained from his language, and the application of canons of construction is unnecessary. If applied, however, they would support my interpretation. (See *Matter of Meyer, supra; Matter of Curlett*, 166 Misc. 944, and cases cited in each.)

Where there is ambiguity and the testamentary intent is veiled in doubtful language the law prefers a construction resulting in complete testacy rather than in partial intestacy (*Johnson* v. *Brasington*, 156 N. Y. 181, 187; *Matter of Ossman* v. *Von Roemer*, 221 id. 381, 387); in the vesting of a future estate at the earliest

possible moment rather than in any contingency (*Hersee* v. *Simpson*, 154 N. Y. 496, 500; *Matter of Chalmers, supra*), especially if the gift be of the residuary (*Fulton Trust Co.* v. *Phillips, supra*, p. 580) and the postponement of possession be merely for the convenience of the estate to let in an intervening estate, such as Miss Miner's life estate (*Matter of Young*, 145 N. Y. 535, 539; *Matter of Embree*, 9 App. Div. 602, 605; affd. on opinion of court below, 154 N. Y. 778); and in the absolute vesting in remaindermen whom the testator designated by name. (*Matter of Lamb*, 182 App. Div. 180, 186; affd., 224 N. Y. 577; *Matter of Soy*, 143 Misc. 217, 221.)

Mrs. Rogers' estate is entitled to the entire remainder, and letters of administration with the will annexed are directed to issue to her ancillary administrator.

The amount of his bond will be determined upon the settlement of the decree to be entered hereon.

Settle decree.