[Civil No. 4353. Filed September 29, 1941.]

[117 Pac. (2d) 91.]

In the Matter of the Estate of MARY H. BAX-
TER, Deceased; HOWARD RIVES, Petitioner
for Partial Distribution, Appellant, v. HUGO B.
FARMER, as Executor of the Estate of Mary H.
Baxter, Deceased; and DOROTHY K. WINS-
LOW, as Administratrix of the Estate of Cornelia
K. Rives, Objector to Petition for Partial Distri-
bution, Appellees.

Mr. Walter J. Thalheimer and Mr. William H. Westover, for Appellant.

Mr. Vere Nadir Norton and Mr. W. H. Gregory, of Los Angeles, California, and Mr. J. Fred Hoover, for Appellee Winslow.

ROSS, J.—This in an appeal by Howard Rives from an order denying his petition for a partial distribu-

tion to him as a legatee under the will of Mary H. Baxter, deceased.

The will, under which appellant claims a portion of the decedent's estate, was made August 13, 1927. The maker thereof was a resident of Yuma County. She died December 20, 1928. In her will she nominated Hugo B. Farmer as executor and devised to him all of her property, real, personal and mixed, wheresoever situate (except a ranch property and appurtenances, devised and bequeathed by her to her niece Frances W. Hardy and her husband), together with the rents, issues and profits thereof, to have and to hold the same in trust, with the powers therein conferred, and for distribution of the proceeds to the persons named and specified.

The executor was authorized and directed to convert all of the property into money; to sell it at private or public sale to the best advantage to the estate and for the highest price obtainable. She directed the reports of sales to be made to the court and specified that no sale should be absolute until thirty days after such report was filed in court, during which time "any beneficiary" under the will might make written objections to a sale and have a hearing before the court. The executor was directed to use due and proper diligence in executing the powers conferred, by selling property and converting it into money and in any event to fully discharge the trust within ten years from and after the testatrix' death, and in a lesser period if it were possible and in the best interests of the estate.

She directed that the moneys belonging to her estate and coming into the executor's hands be disbursed in payment of the expenses of (1) her last illness, funeral expenses and debts; (2) probating her estate; (3) converting property into money and collecting and disbursing the moneys of the estate as provided in the will; (4) executor's fees, fixed in the will at 6% of

all moneys of the estate, and (5) maintaining the will, in case it was contested, and carrying out its provisions.

The will directed the executor to make annual disbursements out of the moneys coming into his hands under the trust therein and to make and file annual accounts of his receipts and disbursements.

The donees under the will and the operative words of gift and amounts each was to receive are as follows: "It is my will and wish" that my sister Ida J. Snyder receive from my estate the sum of One Hundred Dollars, and no more; that from my estate the moneys shall go "to my nephew, King W. Cawthon, the sum of Five Thousand Dollars; to my niece, Amy McIntosh, *nee* Snyder, the sum of Five Thousand Dollars; to my niece, Frances W. Hardy, in addition to the property specifically devised to her, the sum of Five Thousand Dollars; to my nephew, Edward B. Rives, the sum of Ten Thousand Dollars; the above named sums shall be paid to them by said Executor out of the moneys belonging to my estate as soon after my death as reasonably can be done without sacrifice of property belonging to my estate.

"All the rest, residue and remainder of the moneys belonging to my estate which shall come into the hands of my said Executor in the full execution of this trust shall be by him paid in the proportions named to the following persons, which it is my will that they shall receive out of my estate, namely: To Blanche Wisby, *nee* Snyder, a one-sixth share thereof; to Mary J. Kendrick, *nee* Snyder, a one-sixth share thereof; to Edna E. Cordes, *nee* Synder, a one-sixth share thereof, and to Ellen Parker, *nee* Snyder, a one-sixth share thereof; to Robert Rives, Edward Rives and Howard Rives, children of my deceased nephew, Jim Rives, a one-eighteenth share thereof to each of them, the said Robert Rives, Edward Rives and Howard Rives; and

to my nephew, Logan Rives, a one-sixth share thereof, and should any person named in this Will as a beneficiary be not living at the time or times moneys are payable to him or her under this Will, then such moneys shall be paid to their lawful heirs.''

The controversy is over the portion of the moneys of the estate willed to Logan Rives and it comes about by reason of the following facts. Logan Rives, it will be observed, is named in the will as one of the residuary beneficiaries. May 21, 1933, he died intestate, leaving surviving him his wife Cornelia K. Rives, but without issue. Cornelia died March 9, 1938, and Dorothy K. Winslow, one of the defendants and appellees, is the administratrix of her estate. Logan Rives before his death assigned his portion of the estate to his wife Cornelia.

It is the contention of the appellee Winslow that the gift to Logan Rives took effect on the death of the testatrix and that it passed to Cornelia as his sole heir at law, also that it was hers by virtue of the assignment.

It is the contention of the appellant Howard Rives, a nephew of Logan, that the gift to his uncle was one *in futuro,* to take effect and inure to his heirs (of which he is one) living at the time or times the trustee had funds of the estate available for the residuary legatees, and that there were no funds available for the residuary legatees at the time of or before the death of Logan (May 21, 1933), or at the time of or before the death of Cornelia (March 9, 1938), or at any time before April of 1938. This contention of the appellant is based solely upon this phrase of the will:

'' . . . and should any person named in this Will as a beneficiary be not living at the time or times moneys are payable to him or her under this Will, then such moneys shall be paid to their lawful heirs.''

We are to determine from the context of the will, if we can, what the testatrix intended and give

that intention effect. On that score we assume that she wanted the persons named as beneficiaries of her estate to have the portions thereof assigned by her to them as quickly and expeditiously as her executor could convert her property, without sacrificing it, into money, out of which he was directed to disburse the different legacies, and that the gift was immediate and complete upon the giver's death. This conclusion is fortified by the well-recognized rules for the construction of wills. Such rules are well stated and supported by numerous authorities in *In re Mansur's Will,* 98 Vt. 296, 127 Atl. 297, 298, as follows:

" . . . One [rule] is that the law favors the vesting of estates on the death of the testator when the will becomes operative, and if the language used is consistent with an intention to postpone the enjoyment only such will be presumed to have been the testator's intention. This presumption is so favorably regarded that no estate will be held contingent unless positive terms are employed in the will indicating that such is the intention. [Citing cases.] Another rule is that when futurity is annexed to the substance of the gift the vesting is postponed; but if annexed to the time of payment only the legacy vests immediately. Perhaps this rule is nowhere better stated than by Blackstone; he says:

" 'And if a contingent legacy be left to anyone, as when he attains, or if he attains, the age of twenty-one, and he dies before that time, it is a lapsed legacy. But a legacy to one to be paid when he attains the age of twenty-one years is a vested legacy; an interest which commences *in praesenti,* although it be *solvendum in futuro,* and if the legatee dies before that age, his representatives shall receive it out of the testator's personal estate, at the same time it would have become payable in case the legatee had lived.' 2 Bl. Comm. 513."

In *First National Bank* v. *Somers,* 106 Conn. 267, 137 Atl. 737, 739, these rules are very lucidly stated as also the exceptions thereto:

"Two rules of testamentary construction have especial applicability in resolving this inquiry. The law favors the vesting, and the early vesting, of estates, and in the absence of manifestation of a clear intent to the contrary an estate will be construed as vested rather than contingent and, unless otherwise clearly expressed, as vesting immediately upon the testator's death. *Harrison* v. *Moore,* 64 Conn. 344, 30 Atl. 55; *Dale* v. *White,* 33 Conn. 294; Page on Wills, §§ 1110, 1117; 40 Cyc., p. 1650.

"Another rule of frequent and here of particular application is that, if a future event or time is involved, the nature of the interest depends upon whether such future event or time concerns the gift itself or merely the payment of it; when futurity is annexed to the substance of the gift, the vesting is postponed, but if annexed to the time of payment only, the legacy vests immediately. *Colt* v. *Hubbard,* 33 Conn. 281, 286; *Dale* v. *White,* 33 Conn. 294, 296; *In re Mansur's Will* (1925) 98 Vt. 296, 127 Atl. 297, and cases cited at page 299; Page on Wills, § 1111. Where a legacy is given to a person to be paid at a future time, it vests immediately, but where it is not given until a future time, it does not vest until that time. *Geissler* v. *Reading Trust Co.,* 257 Pa. 329, 101 Atl. 797. 'If the time of payment merely be postponed, and it appears to be the intention of the testator that his bounty should immediately attach, the legacy is of the vested kind; but if the time be annexed to the substance of the gift, as a condition precedent, it is contingent.' *Furness* v. *Fox,* 1 Cush. [134, 136] 55 Mass. 134, 136, 48 Am. Dec. 593.

"The decision must depend much upon the form of the words in which the gift is expressed, the other parts of the will, and the surrounding circumstances. *Eldridge* v. *Eldridge,* 9 Cush. [516] 63 Mass. 516. Where the situation is sufficiently equivocal to permit of doubt whether the contingency applies to the gift itself or the time of payment, courts are inclined to construe it as applying to the time of payment and to hold the gift as vested rather than contingent. *Dale* v. *White, supra.*"

There is nothing in the facts of this case showing or tending to show that the gift to Logan Rives

was contingent upon his being alive at the time or times moneys were available to pay the legacy and, therefore, we must regard the gift as one *in praesenti*, only its possession and enjoyment being deferred until funds were available. The provision in the will, that if Logan Rives were not living when the funds were available the legacy should go to his lawful heirs, was not the denial of a present gift but rather the confirmation of it. The testatrix by the use of such language showed her intention to be that, if the beneficiary were not living when funds were available, his lawful heirs should receive the legacy. If, as it seems, the gift was immediate and complete to Logan Rives, then he had the right to assign the same to his wife Cornelia, and upon her death it passed to her personal representative.

It follows that the court's order denying appellant's petition was correct. The donee of the gift in his lifetime having assigned it to his wife, it became hers and when she died it became a part of her estate.

██ It is clear from the language used by the testatrix that she wanted, in case any beneficiary should not be living when money was payable on legacy, that his "lawful heirs" should receive his portion. It can make no difference whether the legacy given to Logan Rives was presently vested in him or postponed to a time when there were residual funds available to its payment, if the time of determining heirship is the date of his death. It is agreed that on that date his lawful heir, under the Arizona law of descent, was his wife Cornelia. It is well settled that the time of determining who are heirs of a person is the date of his death, unless some other time is clearly named. 28 R. C. L. 247, sec. 216; *Welch* v. *Blanchard,* 208 Mass. 523, 94 N. E. 811, 33 L. R. A. (N. S.) 1; *Gorey* v. *Guarente,* 303 Mass. 569, 22 N. E. (2d) 99; *Estate of Newman,* 68 Cal. App. 420, 229 Pac. 898.

Logan Rives' lawful heir at the time of his death was his wife and, under the will, succeeded to his share.

Appellant contends that some other time for determining deceased's heirs is named in the will. He says "the time or times moneys are payable" to the legatee is the time fixed to determine such question. If his contention is correct, then, as payments may be made on legacies at any "time or times" money is available, the legatee's heir (his wife) at the time of his death would recover all funds available up to the time of her death and any balance of the legacy thereafter would go to a different person or persons, who were not entitled to inherit as lawful heirs until the legatee's lawful heir died. Thus, on his theory, the legacy intended for Logan Rives could go in part to his wife and in part to a different class of heirs, the amount of it each would receive depending upon the amount of money the executor had available to apply on the residuary legacies before the wife died, and that of course would depend upon the quantity of the property that had been converted into money, which, in turn, would be influenced by the market and the exertions of the executor, whose duty it is to convert the property into money. This shows the contention of the appellant to be untenable. The testatrix did not intend that the persons receiving her gifts should be selected on the basis of any such uncertainty, or upon the action or nonaction of the executor, or upon the condition of the market, or that it should be split among different classes of heirs. It is but reasonable to conclude that, when the testatrix provided in her will that in event the legatee died before receiving his legacy it should go to his lawful heirs, she meant his lawful heirs at the time of his death and not when the property out of which the legacy was to be paid was converted into money.

The appellant contends that the word "then" in the phrase "then such moneys shall be paid to their

lawful heirs" means the beneficiary's lawful heirs not at the time of his death but at the time or times moneys are available and therefore payable on the legacy. We do not think it has any such significance. It is true, when the word is used as an adverb it denotes time but it is also used in a conjunctive sense, such as "in that event," or "in such case." *First National Bank* v. *Somers, supra.* We think what precedes it shows it was used in the latter sense and, as is often the case with conjunctive words, it might have been omitted without affecting the meaning of the context. It may well be treated as surplusage. Appellant's contention would be more persuasive if it were not that the will provides, in effect, that payments on legacies may be made in installments, or as money was available. "The time or times moneys are payable" does not concern the gift itself but only its payment.

The order appealed from is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.