Pierson R. Hildreth, S.
This proceeding to construe decedent’s joint will is broug’ht to. determine whether the provisions have any testamentary effect. Decedent and his wife made their joint and mutual will August 19, 1963. The wife died March 16, 1964 thereby predeceasing her husband who died on May 20, 1964. When the wife died her distributees were her husband and their five adult children. When the husband died, his distributees were the same adult children.
In their joint will, the testators expressly stated in a preamble clause that they " having heretofore agreed for valuable consideration, hereby mutually acknowledged, to make joint and mutual wills giving to the survivor of us all property * * * —in further consideration of our mutual promises to make such joint and mutual will, do hereby make * * * • — ■ this, and this only, to be our last will and TESTAMENT. ’ ’
By such joint will all property of each was given to the survivor. They also provided “In the event we shall die simultaneously ’ ’ for a bequest of $500 to a daughter, Clara, and the residue to a daughter, Lucy, or to her children if such daughter should predecease them. They appointed each other as executor with a provision that in the event of simultaneous *640 death the daughter, Lucy, be executrix. Such joint will however, made no testamentary disposition whatever of the property of either survivor if they did not meet death simultaneously.
The joint will has never been offered for probate in the estate of the wife. Apparently any property she owned either passed to her surviving husband under section 200 of the Surrogate’s Court Act or was jointly owned.
The daughter, Lucy, contends that since the joint testators made her their residuary legatee in the event that they should die simultaneously, they also intended her to be sole residuary legatee even though deaths did not occur simultaneously and that the will should be so construed. Respondent, a son, takes the position that the joint testators named daughter, Lucy, as residuary legatee only if the joint testators should die simultaneously. Since that did not happen, the son contends that they made no disposition of their estates under the joint will and therefore the husband as the surviving joint testator has died intestate, and his property must pass by intestacy to his five children equally.
The question is whether the estate of the husband passes by intestacy to his five children, or to the two daughters under the joint will.
It seems to the court that the language of the will is clear and definite. When they made their will the testators must have known that the most probable happening would be that one of them would survive the other. A situation of simultaneous death happens only infrequently. If, as the will recites, they intended to make a joint disposition of their properties as agreed we must assume that the will expresses the extent and scope of that agreement. The only testamentary disposition so made by their joint will, except to each other, was the single provision in favor of two daughters expressly stated to be in the event they should die simultaneously. It does not seem unreasonable to assume that they, intentionally left the survivor free to make any disposition that he or she might wish. If the survivor failed to make a will of his or her own there would be no testamentary disposition and such estate' would pass to their five children by intestacy. Under the circumstances here it does not seem to the court that there is any sufficient indication in the will to justify the construction requested by petitioner, and to do so would be to rewrite it based on guess and speculation.
The plain fact is that for the event most likely to happen the joint testators made no testamentary disposition of their estates. The mutual will they did make expressly limited the joint *641 testamentary disposition to the survivor or to a situation when deaths were simultaneous. They could hardly have used any other language more apt, clear or definite to express that intention. If they had any intention of leaving their entire estates only to those two daughters to the exclusion of their other children, except in the remote contingency expressly mentioned, certainly no such intent is revealed by any language used in the will. As stated by the court in Matter of Nelson (268 N. Y. 255, 258 [1935]). “ None the less, the intention must be revealed by the language of the will. The words must be construed in order to find the sense in which they were used by the testator. They may not be perverted or disregarded in order to give effect to an intention which possibly the testator may have had but which is not revealed by the language used in the will. ’ ’
In the natural sense of the words used, bequests to the two named daughters are expressly limited to the contingency of simultaneous death of the joint testators who were their father and mother. That daughter Lucy was made sole residuary legatee by express language only in a contingency quite unlikely to occur would seem to indicate that the joint testators did not intend her to be sole residuary legatee in the ordinary course of events. The express contingency under which the two daughters might receive the estate simply did not occur. The result is intestacy. (Matter of Disney, 190 N. Y. 128 [1907].)
Where the language of the will is ambiguous or subject to different interpretations, construction may be required, and rules of construction may be applied to assist in determining testator’s intent. Such intention, however, is to be determined from the language used in the will. (Matter of Fabbri, 2 N Y 2d 236 [1957].) The court should not make a new will based on speculation as to what the testator might have intended. As stated in Matter of Tamargo (220 N. Y. 225, 228 [1917]) “ The language expresses and directs, we must assume,, the disposition the testatrix intended and desired. If it in its reasonable, ordinary and usual meaning, without the aid of rules of construction, expresses and effects a disposition, our duty and labors end in declaring that disposition. If it creates and supports reasonable meanings of approximately equal dignity and persuasiveness, those rules may be looked to as guides, formulated through extended periods of observation, experience, and study, to correct conclusions. The fact that an event happened, prior or subsequent to the making of the will, which, as the will may indicate or disclose, was unknown or unforeseen and unprovided against by the testatrix, cannot affect the meaning of the language used. *642 When the purpose of a testator is reasonably clear by reading his words in their natural and common sense, the courts have not the right to annul or pervert that purpose upon the ground that a consequence of it might not have been thought of or intended by him,” and at page 231, “ Courts have no power to create a testamentary disposition which is neither expressed nor necessary to be implied.” (See, also, Herzog v. Title Guar. & Trust Co. of N. Y., 177 N. Y. 86, 92 [1903].)
Where the actual language of the will is ambiguous and might be construed in two different ways, one resulting in testacy and the other in intestacy, an interpretation to avoid intestacy is favored if supported by the language used. (Matter of Hayes, 263 N. Y. 219 [1934].) But where there is simply an omission to make a disposition, and ¡the language is clear, the court should not rewrite the will or supply the omission not necessarily implied from the language used even though intestacy results. (Matter of Disney, 190 N. Y. 128 [1907], supra; Matter of Forde, 286 N. Y. 125 [1941]; Matter of Gautier, 3 N Y 2d 502 [1957]; Matter of Hoffman, 201 N. Y. 247 [1911].)
Nor, may the doctrine of a gift by implication be properly applied to the factual situation of this case. “ To uphold a legacy by implication the inference from the will of the intention must be such as to leave no hesitation in the mind of the court and to permit of no other reasonable inference.” (Bradhurst v. Field, 135 N. Y. 564, 568 [1892]; Matter of Benton, 244 App. Div. 56, affd. 269 N. Y. 579 [1935].)
One may speculate as to what the joint testators intended with respect to disposition of the property of the survivor. But it is obviously clear that they themselves made no testamentary disposition nor did the survivor. Petitioner submits that the decision in Matter of Hardie, 176 Misc. 21, affd. without opinion 263 App. Div. 927, mot. for lv. to app. den. 288 N. Y. 739 [1942], and in Matter of Kajkowski (13 A D 2d 994) support her contentions. It does not ,seem to the court that either case establishes any rule contrary to the usual rules of construction. In ascertaining testator’s intent as expressed in his will no case has a brother and each must be determined upon the facts of each particular situation. In the Hardie case the court found that the will indicated decedent’s intent that relatives should not take, and thus construed it. In the Kajkowski case, likewise, the language in the will itself expressly indicated that no provision was made for a grandson who would benefit if the will were construed to produce an intestacy. The court does not interpret that case as establishing an inflexible rule that a bequest made on the express contingency of simultaneous death must be *643 interpreted as indicating an intent that the same beneficiary must take even though the contingency does not happen. This is indicated in the opinion when the court makes specific mention of the fact that the testator in that case expressly indicated that he made no provision for the grandson. There is no language in the present will however which would justify any inference that either of the joint testators disliked any of their children or did not wish them to take the estate of the survivor. The will simply does not dispose of the estate of the survivor. Accordingly the will is construed as having no testamentary effect. The estate of the deceased surviving husband shall be distributed as in intestacy.