530 P.2d 376

In the Matter of the ESTATE of Lemuel J. OVERLOCK, Deceased.

Marguerite H. HUNT, Appellant,

v.

Lowell W. OVERLOCK, Joseph M. Muheim, Jr., and First National Bank of Arizona, as Trustees, Appellees.

No. 2 CA–CIV 1689.

Court of Appeals of Arizona, Division 2.

Jan. 13, 1975.

James D. Whitney and Donald Estes, Tucson, for appellant.

Gentry, McNulty, Borowiec & Hewlett, by Matthew W. Borowiec, Bisbee, for appellees.

## OPINION

HATHAWAY, Judge.

The subject of this appeal is a probate court order determining heirship.

A petition for determination of heirship was filed by the trustees of a testamentary trust created under the will of Lemuel J. Overlock, deceased. The petition alleged inter alia that the trustees sought a judicial determination regarding the distribution of assets described in paragraph Tenth of the will as to the interest to which Lena Hunt, a deceased remainderman, would have been entitled had she lived. Appellant, duly appointed administratrix of the Estate of Lena Hunt, individually and in her representative capacity, filed a memorandum below taking the position that Lena Hunt's interest was an absolutely vested remainder and therefore distribution should be made to the Estate of Lena Hunt.

An additional question presented for judicial determination was with respect to 114 shares of Phelps Dodge Corporation stock held by the trustees. Paragraph Tenth of the will set up a testamentary trust as to specifically described stock in various corporations but no mention was made of the Phelps Dodge stock. Paragraph Fifteenth of the will provided in

substance that all the rest and residue of decedent's estate was to be held in trust under the same terms and conditions as provided in paragraph Ninth of the will. This latter paragraph dealt with a trust corpus of $75,000.

The lower court found that the interest of Lena Hunt in the assets described in paragraph Tenth, including the Phelps Dodge stock, was a defeasibly vested remainder and therefore distribution should be made to the heirs of Lena Hunt in existence at the time of the death of the life tenant (the testator's wife, Ruth Overlock).

The pertinent portions of the will are:

"NINTH: I hereby give and bequeath unto my trustees hereinafter named, and the survivor or survivors of them, and their successors, the sum of Seventy-Five Thousand Dollars ($75,000), to have and to hold in trust for the use and benefit of my beloved wife, Ruth Overlock, . . . and upon the death of my said wife, Ruth Overlock, said principal sum of Seventy-Five Thousand Dollars ($75,000), or the securities in which it or any part of it may then be invested, shall, immediately upon the death of my said wife, pass to and vest in my said residuary legatees and devisees, hereinafter named, their heirs and assigns absolutely and forever.

TENTH: I hereby give and bequeath unto my trustees hereinafter named, and the survivor or survivors of them and their successors, [specifically described stock] . . . and any stock dividends declared and/or issued thereon after my death, to have and to hold the same in trust nevertheless, for the use and benefit of my said wife, Ruth Overlock,

.  .  .

\*    \*    \*    \*    \*

(c) Upon the death of my said wife, the said stock and/or the securities in which any distribution upon dissolution, reorganization, or consolidation may then be invested, shall immediately pass to and vest in my residuary legatees and

devisees herein named, their heirs and assigns, absolutely and forever.

FIFTEENTH: All the rest, residue and remainder, as hereinabove defined, of my estate, . . . which is, or may be subject to my testamentary disposition at the time of my death, I give, devise and bequeath unto my trustees, hereinafter named, to have and to hold in trust for the use and benefit of my beloved wife, Ruth Overlock, as directed heretofore in Paragraph Nine, under the same terms and conditions, for the same uses and purposes, and with the same powers as are herein provided in Paragraph Nine hereof.

SIXTEENTH: It is my will that immediately upon the death of my said wife, Ruth Overlock, that all of my property held by my trustees hereafter named, at the time of her death, shall pass to and vest in my said residuary legatees and devisees, and I hereby give, devise and bequeath, absolutely and to their heirs and assigns forever, in the following proportions, unto the following named persons: . . . unto my niece, Lena Hunt, . . . If any of my said residuary legatees and devisees in this paragraph above named shall not be living at the time of the death of my said wife, Ruth Overlock, then the share to which said residuary devisee and legatee would be entitled if living, out of said trust set forth in Paragraph Nine hereof, shall, upon the death of my said wife, Ruth Overlock, go to the estate of such residuary legatee and devisee, to be disposed of and distributed to his or her heirs at law and/or devisees and legatees in the same manner as his or her principal estate."

■ We agree with the lower court that the interest of Lena Hunt was a vested rather than a contingent remainder. In construing the language of the bequest, early vesting is presumed unless an intention to the contrary clearly appears in a will. In re Baxter's Estate, 58 Ariz. 16, 117 P.2d 91 (1941); 96 C.J.S. Wills §

932a. In Simes, Future Interests, § 11, the following distinction is made between vested and contingent remainders:

> "The essence of the vested remainder is that, throughout its continuance, it is ready to take effect as a present interest however and whenever the preceding estate terminates. On the other hand, the contingent remainder is a remainder subject to a condition precedent. That is to say, there is a condition precedent, other than the termination of the prior estate, which must occur before it is ready to take effect as a present interest. It should be noted that the existence of a divesting condition does not make a remainder contingent. If the condition is subsequent and not precedent, then the remainder is vested."

■■ Since we find no language in the will requiring the occurrence of some contingency before a remainderman's interest took effect as a present interest, Lena Hunt's interest was a vested remainder. Vested remainders can be indefeasibly vested or vested subject to complete defeasance. The Restatement, Property § 157 gives the following illustration of an *indefeasibly vested remainder*:

> "A, owning Blackacre in fee simple absolute, transfers Blackacre 'to B for life, remainder to C and his heirs.' C has a remainder indefeasibly vested."

■■ Just as the law favors early vesting, absent a testator's contrary intention, indefeasibility is favored over defeasibility. 96 C.J.S. Wills § 932b. The language used by the testator here as to the subject interest reads as follows:

> "Upon the death of my said wife, the said stock and/or the securities . . . shall immediately pass to and vest in my residuary legatees and devisees herein named, their heirs and assigns, absolutely and forever." (Paragraph Tenth)

And:

> "It is my will that immediately upon the death of my said wife, Ruth Overlock, that all of my property held by my trust-

ees hereafter named, at the time of her death, shall pass to and vest in my said residuary legatees and devisees, and I hereby give, devise and bequeath, absolutely and to their heirs and assigns forever, in the following proportions, unto the following named persons: . . . unto my niece, Lena Hunt of Bangor, Maine, an undivided one-sixth, . . . ." (Paragraph Sixteenth)

We do not conceive that the use of the words "pass to and vest in" makes the subject remainder contingent. We believe this language was not intended to postpone the vesting but merely referred to the time of payment, i. e., vesting in possession rather than vesting in interest. In re Baxter's Estate, supra.

■ The lower court, however, apparently concluded that the use of the words "their heirs and assigns" rendered the remainder interest subject to defeasance if, as here, the remainderman predeceased the life tenant. Therefore, the court concluded that the heirs of Lena Hunt were entitled to take by substitution. We do not agree with this construction. The word "heirs" is one of limitation to show the absolute nature of the gift and is not a word of purchase. In re Bogart's Will, 62 Misc.2d 114, 308 N.Y.S.2d 594 (1970); In re Hubbs' Estate, 148 Colo. 205, 365 P.2d 543 (1961); Lawes v. Lynch, 7 N.J.Super. 584, 72 A.2d 414 (1950); In re Britt's Estate, 249 Wis. 30, 23 N.W.2d 498 (1946). Since the words "heirs and assigns" are not words of substitution and there is no language requiring survivorship of Lena Hunt, her interest was an indefeasibly vested remainder. Although she died before the life tenant and never came into actual possession of the remainder, her estate was entitled to receive her remainder interest. In re Wetmore's Will, 28 Misc.2d 294, 211 N.Y.S.2d 486 (1961); In re Haradon's Estate, 173 Misc. 993, 19 N.Y.S.2d 364 (1940); Equitable Trust Co. v. Best, 31 Del.Ch. 247, 70 A.2d 1 (Del.1949).

As to the Phelps Dodge stock, the lower court apparently concluded that mention of

such stock had been inadvertently omitted from paragraph Tenth of the will. In view of our conclusion that the interest of the deceased remainderman Lena Hunt should be distributed to her estate, it automatically follows that the Phelps Dodge stock likewise goes to her estate.[1]

The order from which this appeal is taken is hereby reversed and the cause remanded with directions to enter an order directing appellees to distribute the subject assets to appellant in her capacity as personal representative of the Estate of Lena Hunt.

HOWARD, C. J., and KRUCKER, J., concur.

1. If the trial court was in error, the Phelps Dodge stock would fall under the provisions of paragraph Fifteenth requiring its distribution to the trust set up in paragraph Ninth. Then, under paragraph Sixteenth, a deceased remainderman's share in the trust corpus of paragraph Ninth is distributable to the estate of the decedent remainderman.