[Civil No. 4284.   Filed March 3, 1941.]

[110 Pac. (2d) 956.]

In the Matter of the Estate of THEODORA L. HAY-WARD, Deceased; WINIFRED VAN HAGEN, CHARLOTTE I. THOMPSON, Formerly Charlotte Thompson Lloyd, and JOHN WATSON THOMPSON, Sometimes Called Jack W. Thompson, Contestants, Appellants, v. J. HARRY NEWTON, Petitioner for Ancillary Probate of the Last Will and Testament of Theodora L. Hayward, Deceased, Appellee.

Messrs. Woolf & Shute, for Appellants, and Mr. W. T. Elsing, on the Brief.

Mr. Carl G. Krook, of Kingman, Arizona, and Mr. A. A. Clements, of Paonia, Colorado, for Appellee.

ROSS, J.—Theodora L. Hayward, a resident of Paonia, Delta County, Colorado, died testate August 14, 1939. Her will was admitted to probate in said Delta County on September 18, 1939, and letters tes-

tamentary were issued to J. Harry Newton, the named executor thereof. Thereafter said executor applied to the Superior Court of Mohave County, Arizona, for ancillary letters and in his application represented that the decedent at the time of her death "owned an undivided one-half interest in the residue of the estate of John Watson Thompson, now being probated in the County of Mohave, State of Arizona."

Winifred Van Hagen, Charlotte I. Thompson (formerly Charlotte Thompson Lloyd) and John Watson Thompson, cousins of the decedent and nieces and nephew, respectively, of John Watson Thompson, deceased, contested the issuance of letters ancillary on the ground that the decedent left no property in Mohave County.

The John Watson Thompson will, after specifying a considerable number of gifts to friends and relatives, contained this provision:

"7. All the rest and residue of my estate, real and personal, of which I shall die seized and possessed, or to which I shall at my decease in any way be entitled, including any lapsed legacies or devises, I give, devise and bequeath to my nieces, Miss Theodora L. Hayward, of Paonia, Delta County, State of Colorado, and Miss Winifred Van Hagen, of Oakland, California, in equal shares, and if either of them shall have died before my decease, without issue living at the time of my death, then her share shall pass to my said sister, Mrs. Emily D. Van Hagen, my niece, Charlotte Thompson Lloyd, and my nephew, John Watson Thompson, or the survivor or survivors of them, share and share alike."

By this provision of the will the residue of the Thompson estate, after payment of special devises and legacies, passed to Theodora L. Hayward and Winifred Van Hagen in equal shares, both having outlived the testator. It is undisputed that one-half of such residue amounted to around twenty thousand dollars.

It is also a fact that the executors of the Thompson estate recognized that Theodora L. Hayward had a one-half interest in such residue during her lifetime, and that Winifred Van Hagen owned the other one-half.

One of the questions raised is whether under the Thompson will Hayward's one-half interest died with her, and another is whether she had before her death voluntarily created a trust of her interest in the estate with Winifred Van Hagen as the beneficiary. The trial court decided both these questions in the negative, and directed that letters ancillary issue to Newton. The contesting heirs have appealed.

The evidence which appellants claim establishes a trust of Hayward's interest in favor of Van Hagen consists of letters written by Hayward and of conversations during her lifetime. When all the letters taken together are considered, we think they manifest an intention on the part of Hayward in the future to give to Van Hagen her one-half interest, but not an intention to transfer her title or interest therein immediately. She continued up to her death to direct the executors of the Thompson estate as to what to do with her part of the income therefrom. She gave such executors no formal writing authorizing or directing them to collect and hold her part of the estate for the use and benefit of Winifred Van Hagen, as one who was creating a trust and appointing trustees to manage and care for it ordinarily would do. She continued to accept remittances of her share of the income, not as trustee but as owner.

She died, as above stated, on August 14, 1939. At the time Van Hagen was with her and had been for more than a month. On July 23, 1939, the latter wrote to J. H. Knight, one of the executors of the Thompson estate:

"Here I am at Paonia with a sick woman. Theodora is far from well—she does not know that I am writing but I would suggest that you and Mrs. Lassell (the other executor) send her a check for the amount that has accumulated to her credit. . . . "

In response to the request in the above letter, the executors remitted that portion of the income, or $2,500, belonging to Hayward and in acknowledging receipt thereof Van Hagen wrote, on August 8th, to Mr. Carl G. Krook, attorney for the Thompson estate, as follows:

"The checks should have been acknowledged several days ago but the pressure of responsibilities here has kept me from my desk. Please pardon the delay.

"I can't express how dismayed I felt when your letter informed me that you could not pay Miss Hayward in full due to the fact that you had been sending me part of her inheritance. Such a contingency had never entered my mind. . . . "

The checks here referred to were delivered by Van Hagen after the death of Miss Hayward to the latter's executor, Newton, and became a part of the Hayward estate.

On August 5, 1939, nine days before her death, Theodora L. Hayward wrote and signed a letter to Mr. Krook introducing Mr. Charles Woolf, an attorney of Phoenix, Arizona, and in it requested Krook to give the latter "your assistance in performing the services outlined in the letter of my Colorado attorney." The letter of her Colorado attorney to Krook stated, in part:

"Before giving you a definite answer relative to leasing Watkins corner Miss Hayward desires:

" (a) information as to whether leasing of this property would be to the best interests of Miss Van Hagen and herself

" (b) full information as to terms of lease, viz, use of property, consideration, length of term, etc."

Nine days before her death Hayward was exercising the authority of an owner of the Watkins corner.

The testimony of conversations had with Hayward as to what she intended to do or had done with her interest in the Thompson estate was that of parties who would greatly benefit if the trust theory was upheld. The source of this testimony at once questions its quality.

On evidence from which different inferences might reasonably be drawn, and on evidence from the mouths of the parties deeply interested in establishing the claimed trust, the court found the issue in favor of the petitioner and under the rule that we have uniformly followed we will not disturb such finding.

■■ The most that can be said in favor of the trust theory is that the evidence shows that Hayward had expressed a wish to be done with the Arizona property willed to her by Thompson; had complained of the dilatoriness of winding up the Thompson estate; had used language expressive of an intention to give her part thereof to her cousin Van Hagen, and had suggested that with it the latter would be made comfortable and be relieved from the necessity of teaching any more. This evidence is not sufficient to constitute Hayward's interest in the Thompson estate a trust for the use and benefit of Van Hagen. It could be nothing more than an imperfect or incomplete trust.

"It is a well established rule that where an intended gift is incomplete or imperfect because of lack of delivery or other cause, and there is insufficient evidence to establish a trust, the courts will not, on account of such imperfection, convert the imperfect gift into a declaration of trust in order to effect the intention of the donor. If this were not so, an expression of present gift would in all cases amount to a declaration of trust, and any imperfect gift might be made effectual simply by converting it into a trust. There is no principle of equity which will perfect an imperfect gift,

and a court of equity will not impute a trust where a trust was not in contemplation. . . . '' 26 R. C. L. 1185, sec. 21.

■ The next step is an inquiry into the nature and extent of the interest Hayward acquired in the Arizona property under the Thompson will. This involves a construction of that instrument. The question is what did the testator intend that she should have. His intention is controlling. *Pass* v. *Stephens*, 22 Ariz. 461, 198 Pac. 712. We shall first look to the will to determine the maker's intention.

The appellants' contention is that when the will is properly construed it gives Hayward a fee in such property, subject to an executory devise vesting in appellants immediately upon Hayward's death without issue. At the time Thompson made his will there were living a sister Emily D. Van Hagen, of Oakland, California; three nieces, to wit, Charlotte Thompson Lloyd, of Chicago, Illinois; Theodora L. Hayward, of Paonia, Colorado; Winifred Van Hagen, of Oakland, California, and one nephew, John Watson Thompson, of San Francisco, California. To the sister he bequeathed $1,000 in cash; to his niece Charlotte Thompson Lloyd he devised real property in Kingman, Mohave County, Arizona, known as the ''Russell Place''; to his nephew John Watson Thompson he devised real property in Kingman known as the ''Old Trails Garage.'' In addition to these, he made cash bequests, to some sixteen persons and institutions, ranging from $500 to $2,000, and devised to Frank Bonelli, of Kingman, real property in Kingman known as the ''Pink Cottage Property.'' Immediately following these bequests and devises, he provides that if any of them lapse through death of a legatee or devisee before the testator's death ''it shall become a part of the residue of my estate.'' Then follows clause

number seven set out in the forepart of this opinion. In clause seven, Hayward and Van Hagen are the residuary legatees and devisees; they are to share equally in the residue if both are living at the testator's death and should either die before the testator leaving no living issue at that time her interest is to go to the testator's sister, his niece Charlotte Thompson Lloyd, and his nephew John Watson Thompson, or the survivor or survivors, share and share alike. The implication is clear that if either (Hayward or Van Hagen) should have living issue at the time of the testator's death, although she be not then alive, her portion would or should pass to such living issue. But neither had died and the contingency of living issue had failed; so, by apt and direct language, the appellants were eliminated as devisees. They were to take Hayward's portion of the Thompson estate only if she should die before Thompson without issue living at the time of Thompson's death.

■ Appellants, however, further contend that they are made devisees of the Hayward portion of the Thompson property by this final statement of Thompson's will:

"It is my wish, though this is not a restriction or a limitation upon the use and enjoyment of the legacies and bequests herein made, that my estate, after the payment of my debts, the cash bequests and expenses of administration, shall be kept among the descendants of my late father and mother."

Appellants take the position that the testator used the word "wish" in a testamentary sense and not a precatory sense. There are many cases reported in which such word and like words, depending upon the context in which they are used, are construed as dispositive. Such a case is *In re Tooley's Estate,* 170 Cal. 164, 149 Pac. 574, Ann. Cas. 1917B, 516, the first case cited and relied upon by appellants to support

their proposition. The will in that case is a short one and we give it in full:

"I give all my property at my death to my daughter Logan Mattie Tooley. If at her death she has neither husband or children I desire any property that may be left divided equally among my sisters and brother."

It was held that the word "desire", as used, was a command sufficient to effect a testamentary disposition of the property, and that it was not an expression of a wish or preference directed to the daughter. It seems that the context in which the testator in the Tooley case used the word "desire" makes it as clear that it was testamentary as if he had used the word "devise" or "give." It is the rule, where words of recommendation, request, and the like, are used in direct reference to the estate, to give them *prima facie* testamentary effect. For instance, the expression "I wish five thousand dollars to go to John C. Cole" is an effective legacy. *Estate of Wood*, 36 Cal. 75. In the Tooley Estate case the court said:

" . . . Where the words are used to describe a disposition of property, that is, where they are directed to the executor or to the law, and not to a devisee or legatee, the authorities are uniform that the word ["desire"] is sufficient to declare a disposition of the property. The second paragraph of the will is not directed to Logan Mattie Tooley at all, but is a clear statement that, upon her death without husband or children, whatever of her mother's estate then remains is to be divided equally among the sisters and brother of Martha L. Tooley."

Another case relied upon by appellants is *Cumming* v. *Pendleton*, 112 Conn. 569, 153 Atl. 175, 176. In that case the provisions of the will were:

"Second. All the rest, residue and remainder of my estate, both real and personal wheresoever, and whatsoever the same may be, I give, devise and bequeath to my wife Alida J. Cumming.

"Third. If my wife Alida J. Cumming should re-marry, it is my desire that my estate be divided equally share and share alike between her and my daughter, Alida Estelle and my son, Thomas William."

The Connecticut court, upon reasoning substantially the same as in the Tooley Estate case, held the phrase "it is my desire" was imperative in the connection in which it was used, and the court should give it that effect.

■ With the reasoning and conclusions reached in these cases, and many others of like import, we fully agree. The only question is, do the facts of the present case bring it within the rule? We think not. We regard the wish expressed by Thompson as a recommendation or a request directed to his legatees and devisees, descendants of his father and mother, because: (1) The "wish" expressly disclaims any intention to limit or restrict the use and enjoyment of the property given to the devisees and legatees; (2) the devises to the testator's niece and nephew, Charlotte Thompson Lloyd and John Watson Thompson, are complete fee simple titles with no limitation over or provision of survivorship; (3) the appellants may be, as above stated, devisees or legatees of his estate only if Hayward should die without living issue *before* the testator died; and (4) the wish is evidently addressed to legatees and devisees who are descendants of his father and mother. In other words, the testator had apportioned his estate among the descendants of his father and mother as he wanted them to have it, and then expressed the wish *to them,* as a parting word, that he would like for them in disposing of such donations, whether by will or deed, to do so to the lineal descendants of his father and mother, leaving it, however, to them to follow such recommendation or not as they pleased. He does not undertake to command or direct his donees in their disposition

of such property, except as they might be guided by his wishes. This wish is all-pervading; it is perpetual.

"It is," he says, "my wish . . . that my estate . . . shall be kept among the descendants of my late father and mother." This expression, if effective as a disposition of his gratuities now or in the future by those who may come into the ownership of any part of his estate, would violate our statute against perpetuities. Section 71–106, Arizona Code 1939. The only persons to whom any of his estate might be conveyed or devised or bequeathed are the descendants of his father and mother. It is not confined to the living but extends to future generations *ad infinitum*. If any of the estate is sold or devised to anyone else, it is not "kept among the descendants", etc. The testator could not, even if he wanted to, impose such restriction indefinitely on the alienability of property.

We think the rule stated in 19 American Jurisprudence 575, section 120, is the one controlling the situation here. It reads:

"The general rule is well established that whenever an estate is given to a person generally or indefinitely with an unlimited power of disposition annexed, invariably the absolute fee is vested in the first taker, and an executory limitation over is repugnant and void. . . .

"Where there is an absolute or unlimited devise or bequest of property, a subsequent clause expressing a wish, desire, or direction for its disposition after the death of the devisee or legatee will not defeat the devise or bequest or limit the estate or interest in the property to the right to possess and use during the life of the devisee or legatee. The absolute devise or bequest stands, and the other clause is to be regarded as presenting precatory language. The will must be interpreted to invest in the devisee or legatee the fee simple title of the land and the absolute property in the subject of the bequest.

"In the case of executory devises, the question whether the primary gift is in fee, so as to exhaust the entire estate, is in each case to be decided on a

careful examination of the entire will, aided by legitimate extrinsic evidence, to ascertain the actual intent of the testator, which intent, when so discovered and made obvious, is controlling.''

This text is supported by numerous cases.

Appellants assign as error the court's ruling permitting, over their objection, the scrivener of the Thompson will to testify as to what the testator said concerning the ''wish'' in the will. We do not find it necessary to pass upon the question as to whether this was permissible under the rules of evidence, because we think the will itself is plain and unambiguous.

██ We think the gift of the Arizona property to Theodora L. Hayward gave her a fee simple title to the property, with the right and power of disposition as she saw fit, and that the ''wish'' expressed in the will was merely precatory and therefore did not have the effect of destroying the gift. It follows that the estate of Theodora L. Hayward owned property in Mohave County and that therefore the court had jurisdiction to appoint J. Harry Newton and grant him ancillary letters.

The judgment of the lower court is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.