212 P.2d 764

NEWHALL et al. v. McGILL.
No. 5069.

Supreme Court of Arizona.
Dec. 12, 1949.

Snell, Wilmer, Walsh & Melczer, of Phoenix, for appellants.

Clark & Clark, of Phoenix, for appellee.

DE CONCINI, Justice.

Mary McGill Luke died in January, 1939, leaving a witnessed will dated August 4, 1928, which appointed her sister, Sarah C. McGill, executrix. Her will was admitted to probate February 8, 1945, in Maricopa County, Cause No. 19135. She left fifteen heirs. Sarah C. McGill was the sole devisee. Helen Newhall, another sister residing in Chicago, died in that city in 1944. The latter left a will bequeathing one-sixth of her estate to each of plaintiffs in this action, appellants herein, viz.: Franklin D. Newhall and Agnes Newhall, who bring this action as heirs. Franklin D. Newhall acts also in the capacity of administrator of the estate of Helen Newhall, deceased.

Plaintiffs first filed an action in the Superior Court of Maricopa County, being Civil Cause No. 55554, the file of which is not here on appeal, although the minute

entries of the court in that case are a part of the record by stipulation of counsel. The lower court dismissed plaintiffs' complaint in that action on May 8, 1946. The defendant, appellee, here maintains that said dismissal is res judicata and judgment of the lower court in the probate matter (Cause No. 19135) should be affirmed because of the dismissal of plaintiffs' complaint in Action No. 55554.

It appears from the meager records we have here in action No. 55554 that the court was without jurisdiction of that cause under our holding in Re Estate of Hesse, 62 Ariz. 273, 157 P.2d 347, except to dismiss it; and therefore the same is not res judicata.

Plaintiffs filed petition for determination of heirship in the probate matter, August 16, 1946. Twelve relatives by consanguinity of Mary McGill Luke filed a renunciation in favor of Sarah C. McGill, sister of deceased. Both sides made a motion for judgment on the pleadings and stipulated there was only one issue to be decided and that was whether or not the disposing clause of the will was valid. The will is set out haec verba below:

"The Last Will and Testament

"In the Name of God, Amen. I, Mary McGill Luke of the State of Arizona County of Maricopa, State of Arizona, being of sound and disposing mind and memory, do make, publish and declare this my last Will and Testament, hereby revoking and making null and void all other last Wills and Testaments by me made heretofore.

"First—My Will is that all my just debts and funeral expenses shall be paid out of my Estate, as soon after my decease as shall be found convenient.

"Second—I give, devise and bequeath to my sister, Sarah Campbell McGill all my real and personal property to be cared for and disposed of according to my personal directions to her.

"I nominate and appoint same Sarah Campbell McGill of Phoenix, Arizona as Executrix of this my Last Will and Testament.

"In Testimony Whereof, I have set my hand to this, my Last Will and Testament, at Phoenix, Arizona this 4th day of August, in the year of our Lord, One Thousand Nine Hundred twenty-eight.

"Mary McGill Luke.

"The foregoing Instrument was signed by the said Mary McGill Luke of Phoenix—Arizona in our presence and by her published and declared as and for her Last Will and Testament, and at her request, and in her presence, and in the presence of each other, we hereunto subscribe our Names as Attesting Witnesses, at Phoenix, Ariz. this 4th day of August, 1928.

"Estelle Holman Resides at Phoenix, Ariz.

"Maggie Malone Resides at Phoenix, Ariz.

"Sections 1204 to 1225, Revised Statutes of Arizona, 1913, Chapter XIX, Title 6, and Amendments thereto."

The lower court dismissed plaintiffs' complaint and held that the devise was in fee and the words "to be cared for and disposed of according to my personal directions to her" were merely precatory and surplusage.

Plaintiffs on appeal make several assignments of error which may be boiled down to one issue: Does the disposing clause in the will make a valid devise in fee or does it create a trust?

Plaintiffs maintain it creates a trust and is therefore void because it is indefinite and uncertain.

▪. This court agrees with plaintiffs that if a trust was created it must fail for want of certainty. A valid trust must among other things have (1) subject matter that is certain, (2) beneficiaries specifically designated. Thompson on Wills, 2d Ed., Sec. 419, p. 36.

▪ The next question is: Do the words following the devise create a precatory trust? In order to create a precatory trust (1) the words must be imperative in their nature, (2) subject of recommendation or wish must be certain, (3) the object of the bounty must be certain. McDuffie v. Montgomery, C.C., 128 F. 105. Applying the foregoing tests to the situation at hand we hold that no type of trust was created.

▪ The cardinal rules for construction of all wills is to ascertain the intention of the testator, and this intention is to be ascertained from the words of his will, taking into view when necessary or appropriate the circumstances under which it was made. In re Estate of Marti, 132 Cal. 666, 61 P. 964, 64 P. 1071.

▪ The court will determine from the context of the will what the testator intended and give that intention effect. In re Baxter's Estate, 58 Ariz. 16, 117 P.2d 91. In this case the circumstances of making the will are not shown except that the will was "regularly made" although obviously "homemade" and not the work of a lawyer. The will is written in long hand, apparently by one of the witnesses, by her filling in the blanks of a printed form. There is no other disposing clause except the one in question.

▪ All the blood relatives of deceased, with the possible exception of plaintiffs, whose relationship is not shown, recognized that the testatrix intended defendant to have her property by renouncing any rights they might have in favor of the devise to defendant. Plaintiff's predecessor in interest, Helen Newhall, sister of Mary McGill Luke, died five years after the testatrix. It is significant to note that Helen Newhall didn't come forward after the death of testatrix in 1939 and before her death in 1944 to claim her interest, if any, in the property of testatrix. Her interest, if any, would have vested upon the

death of the testatrix. Home Ins. Co. v. Latimer, 33 Ariz. 288, 264 P. 103; Stephens v. Comstock-Dexter Mines, 54 Ariz. 519, 97 P.2d 202.

■ "Courts will assume that no testator intends to make conflicting provisions in his last will." Rosenberger v. Rosenberger, 184 Va. 1024, 37 S.E.2d 55.

"It is a well-recognized rule that where an estate in fee is given in one clause of a will in clear and explicit terms, the interest which the devisee thus obtains in the lands cannot be taken away or diminished by any subsequent vague or general expression of doubtful import, or by any inference deducible therefrom, that may be repugnant to the estate given." Irvine v. Irvine, 69 Or. 187, 136 P. 18, 19.

In Fields v. Fields, 139 Or. 41, 3 P.2d 771, 773, 7 P.2d 975, the court quotes with approval from the following:

1. 40 Cyc. pp. 1734, 1735: " ' * * * The more modern rule, however, is that, in order that a trust may arise from the use of precatory words, the court must be satisfied, from the words themselves, taken in connection with all the other terms of the disposition, that the testator's intention to create an express trust was as full, complete, settled, and sure as though he had given the property to hold upon a trust declared in the ordinary manner. * * *' "

2. 1 Perry on Trusts and Trustees, 6th Ed., Sec. 115: " ' * * * "Where the later words of a sentence in a will go to cut down an absolute gift contained in the first part of a sentence, and are inconsistent with such gift, the court will, if it can, give effect to the absolute gift." * * *' "

A well-reasoned statement of the law as to when a trust is intended and established is found in Re Feldman's Estate, 78 Cal. App.2d 778, 178 P.2d 498, 504:

" 'There is a well-recognized distinction between an uncertainty where the intent to establish a trust is clear but the provisions are so indefinite as to render the trust void for uncertainty, and the uncertainty which simply indicates the want of intention to create a trust. Loomis Inst. v. Healy, 98 Conn. 102, 119 A. 31. This distinction is discussed in Pratt v. Trustees of Sheppard & Enoch Pratt Hospital, 88 Md. 610, 42 A. 51, 56, wherein the following appears:

" ' "But it must be borne in mind that there is a distinction between a trust that is void for uncertainty, and an uncertainty that is simply indicative of the absence of an intention to create a trust. In the one case there is no uncertainty as to the intention to create a trust, but merely an uncertainty as to the objects to be benefited or the subject to be affected; in the other case, there is simply an uncertainty as to whether any trust was intended to be created at all. If it be uncertain as to whether there was an intention to create a trust, it is obviously not the province of the courts to ingraft a trust upon the gift;

but, if it be apparent from the whole will that a trust was intended to be established, then the uncertainty as to the objects or the subject of that trust will not indicate that there was no intention to raise a trust, but the uncertainty will avoid the trust attempted to be founded. Where the expressions have been held too vague to show an intention to create a trust, the devisee or legatee retains the property for his own use; but where the intention to create a trust is sufficiently expressed, and yet the objects or the subjects of it are uncertain, the gift fails, and the heir or next of kin is let in to the beneficial ownership." * * *'

"'* * * In the authorities last cited it is said that where a testator has made an unrestricted devise of property by the terms of his will, subsequent precatory language will not be deemed to create a trust therein. In (the) Estate of Browne, supra, it is stated that a trust will not be created in the absence of language imposing upon the devisee an imperative obligation to perform specific acts. The early liberal construction of language upholding precatory trusts has been frequently rejected by modern authorities in this and all other jurisdictions. In 1 Bogert on Trusts and Trustees, § 48, it is said in that regard at page 231:

"'"The tide has run so strongly against turning precatory expressions into words of trust that the ordinary words of request, recommendation, wish, and desire are quite generally construed to have no legal effect."'"

In the instant case the uncertainty is of such a character that it indicates a want of intention to establish a trust, and therefore we refrain from engrafting a trust upon a gift.

In re Ferdun's Estate, Cal.App., 205 P. 2d 456, 458, in construing a will that bequeathed "Everything I own * * * to my Brother 'John * * *'" the court interpreted the following as not creating a trust, nor limiting the specific devise: "The vineyard on Harney Lane, I call it the Addie Ferdun vineyard, you keep as long as you live, at the time of your death John (you) leave it to Ernest Ferduns family—that is the 4 nephews and one niece Gladys. Clarence Ferdun to be Executor of that ranch."

■ Courts have held that precatory words directed to an executor indicate the objects of a trust in the mind of the testator, while the same words addressed to a devisee do not indicate a trust. In re Hood's Estate, 57 Cal.App.2d 782, 135 P.2d 383; Thomas v. Buck, 236 Ky. 241, 32 S.W.2d 1006; Thomas v. Anderson, 8 Cir., 245 F. 642; In re Estate of Marti, supra, 61 P. 964, 64 P. 1071; In re Farrelly's Estate, Cal.App., 296 P. 670. In the instant case while the sole legatee and devisee is also the named executrix, yet the reference to "directions" in the will are to her as "my sister" and not as "executrix." The law seems to be well-settled that mere

precatory words will not create a trust. In re Feldman's Estate, supra. The question then is: Are the words in dispute herein precatory words? In re Estate of Hayward, 57 Ariz. 51, 61, 110 P.2d 956, 960, this court quoted from 19 Am.Jur. 575, Estates, Sec. 120:

" 'The general rule is well established that whenever an estate is given to a person generally or indefinitely with an unlimited power of disposition annexed, invariably the absolute fee is vested in the first taker, and an executory limitation over is repugnant and void. * * *

" 'Where there is an absolute or unlimited devise or bequest of property, a subsequent clause expressing a wish, desire, or *direction* for its disposition after the death of the devisee or legatee will not defeat the devise or bequest or limit the estate or interest in the property to the right to possess and use during the life of the devisee or legatee. The absolute devise or bequest stands, and the other clause is to be regarded as presenting *precatory language*. The will must be interpreted to invest in the devisee or legatee the fee simple title of the land and the absolute property in the subject of the bequest.

" 'In the case of executory devises, the question whether the primary gift is in fee, so as to exhaust the entire estate, is in each case to be decided on a careful examination of the entire will, aided by legitimate extrinsic evidence, to ascertain the actual intent of the testator, which intent, when so discovered and made obvious, is controlling.' " (Emphasis supplied.)

In the instant case it is our opinion that the language used does not indicate a trust in any way, the words "according to my personal directions" being merely precatory. "Likewise the use of the word 'direct' has under some circumstances, been held to be precatory when addressed to the legatee or devisee and not to the executor." In re Farrelly's Estate, supra.

In re Will of Jansen, 181 Wis. 83, 193 N.W. 972, 49 A.L.R. 5, the word "direct" was construed as a mere expression of a desire or wish of the testator to his wife in a will where he gave her his property " '* * * absolutely with full power to sell at any time she may see fit' * * * 'I direct that after the demise of my beloved wife * * *, the following property be given to my son, * * *.' "

In Moore et al. v. Garvey's Adm'r, 290 Ky. 61, 160 S.W.2d 363, the deceased left a will in these words: " * * * I want my sister Mrs M H Coleman to have what I leave in the event she survives me to use as near following directions as possible * * *." The court held that the words "as near following directions as possible" did not take away from the absolute gift, therefore there was no trust.

In order to ingraft a trust upon this will we would have to assume that any "directions" that may have been given to the devisee by the testatrix were "imperative" in their nature. To make such an as-

266

sumption, in order to create a trust, which would destroy the will of the testatrix would be going beyond the point of reason. We need no assumption to uphold the validity of the will. The well-established rule is that of two constructions of the language of a will, the one favoring testacy will be followed. "An intestacy is a dernier (last) resort in the construction of wills, and the abhorrence of courts to intestacy under a will has been likened to the abhorrence of nature to a vacuum." 57 Am.Jur., 1158, p. 756. California Probate Code, § 102 provides "of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy." Montana has a similar code provision, Rev.Code 1921, Secs. 7016–7025. While a precatory trust was not involved this court has said "Testacy is favored by the law." In re Sullivan's Estate, 51 Ariz. 55, 74 P.2d 346, 348; Moore v. Garvey's Adm'r, supra. The cases are legion on that general rule of law.

Quoting again from Fields v. Fields, supra [139 Or. 41, 3 P.2d 773]: " * * * If such words (precatory) are used in their primary sense, it is obvious, or should be, that they can impose no obligation upon the first taker. If, however, the rest of the will shows that the words are really imperative, and that beneath the veil of courtesy there lurks a positive order, then the trust should be effectuated. * * *."

We can find no positive order nor can we read any imperative command, into the will of the testatrix.

"It is an elementary rule in the construction of wills that the language used must be liberally construed with a view to carrying into effect what the will as a whole shows was the real intent of the testator." In re Effertz' Estate, Mont., 207 P. 2d 1151, 1152.

Evidently the lower court felt that the testatrix had no intention of creating a trust. Whether a trust is created by precatory words depends on the court's impression as to maker's intention. In re Sowash's Estate, 62 Cal.App. 512, 217 P. 123.

Judgment affirmed.

UDALL and STANFORD, JJ., concur.

LA PRADE, Chief Justice (dissenting).

With due deference to the opinion entertained by majority of this court I am compelled to dissent.

I am of the opinion that the disposing clause of the will bequeathing and devising, or attempting to bequeath or to devise, the estate of the testatrix is an invalid testamentary disposition as constituting a testamentary disposition made without the formalities and safeguards required by the provisions of Section 41-102, A.C.A. 1939, statute of wills, and not being within any of the exceptions permitted by this section or Sections 41-104 and 41-105.

The disposing clause reads: "I give, devise and bequeath to my sister, Sarah Campbell McGill all my real and personal

property to be cared for and disposed of according to my personal directions to her."

The majority opinion is to the effect that Sarah Campbell McGill took the estate for herself and herself alone disregarding the language "to be cared for and disposed of according to my personal directions to her", with which conclusion I am unable to agree.

The language used by the testatrix giving the words their usual and ordinary meaning, is clear, plain and unequivocal; and considering a well-known rule of construction that, where no ambiguity in phraseology exists, the intention of the testator is to be discovered in the express language which he used, Lowell v. Lowell, 29 Ariz. 138, 240 P. 280; and as was said In re Ogden's Estate, 78 Cal.App. 412, 248 P. 680, 681, " * * * the question for the court to determine is not what she intended to declare in her will, but what she intended by what she did declare therein. * * *" I recognize that one of the cardinal rules of construction of wills is to ascertain and give effect to the intention of the testator and that testacy is favored by the law. However, this court should not adopt a construction founded on conjecture or supply an omission by rewriting a will in order to avoid a conclusion of intestacy. In re Hisey's Estate, 106 Cal.App. 678, 289 P. 889. Nor should the court, under the guise of construction, make a will for a testator to take the place of the one made by him if its intent is plain; and, this is so regardless of the consequences to the testator's will.

In re Beldon's Estate, 11 Cal.2d 108, 77 P.2d 1052.

In the present case can it be said that the testatrix, by the use of the words "to be cared for and disposed of according to my personal directions to her", intended to pass a fee simple estate? These are not mere words of desire or request, but in fact constitute a limitation upon and a direction as to the disposition of the estate not reduced to writing or executed with the solemnities required by our statutes. There is no intimation that the testatrix was expressing only a wish or a hope as to the ultimate disposition to be made of the property by someone else. The testatrix made it clear that the property was to be cared for and disposed of in a certain fashion made known by the testatrix to the devisee through personal and apparently oral directions. In any event the method of disposition was not left to the discretion of the devisee with the expectation that the testatrix' desires or wishes would be followed, but to be " * * * disposed of according to *my* personal *directions* to her." (Emphasis supplied.)

The mere fact that the testatrix used these words at all shows an intention to devise an estate other than in fee simple. If the testatrix intended to give a fee simple estate no such words were required for the reason that a fee simple estate carries with it the absolute power of disposal.

In re Hayward's Estate, 57 Ariz. 51, 110 P.2d 956, 957, the testator (Thompson) de-

vised the residue of his estate to two nieces, Theodora and Winifred, in equal shares, " * * * and if either of them shall have died before my decease, * * * then her share shall pass to * * * (others)." Both nieces outlived him. On the death of Theodora claim was made that her interest under the Thompson will died with her. The claimants contended that they were devisees of Theodora's portion of the Thompson property by this final statement in the Thompson will: " 'It is my wish, though this is not a restriction or a limitation upon the use and enjoyment of the legacies and bequests herein made, that my estate, after the payment of my debts, the cash bequests and expenses of administration, shall be kept among the descendants of my late father and mother.' " Their claim was denied upon the grounds that the "wish" was not imperative in the connection in which it was used. The court said: " * * * We regard the wish expressed by Thompson as a recommendation or a request directed to his legatees and devisees, descendants of his father and mother, because: (1) The 'wish' expressly disclaims any intention to limit or restrict the use and enjoyment of the property given to the devisees and legatees; * * * (4) the wish is evidently addressed to legatees and devisees who are descendants of his father and mother. In other words, the testator had apportioned his estate among the descendants of his father and mother as he wanted them to have it, and then expressed the wish to

them, as a parting word, that he would like for *them* in disposing of such donations, whether by will or deed, to do so to the lineal descendants of his father and mother, leaving it, however, to *them* to follow such recommendation or not as they pleased. He does not undertake to *command* or *direct* his donees in their disposition of such property, except as they might be guided by his wishes. This wish is all-pervading; it is perpetual. * * *" (Emphasis supplied.)

Did the testatrix, Mary McGill, express any wish to her sister that when she (the sister) disposed of the property that the testatrix merely hoped, expected or desired that her recommendations would be followed? I think the answer is no. She *said* that the property was to be " * * * disposed of according to *my* personal *directions* to her." (Emphasis supplied.)

The majority opinion cites In re Ferdun's Estate, Cal.App., 205 P.2d 456, presumedly with the thought in mind that it demonstrates that the words here under consideration are precatory. For the exact language of the will in the Ferdun case see quote in the majority opinion. The California court in concluding that this language was precatory pointed out that the testatrix did *not* say "*I* leave it to Ernest Ferduns family" but after advising him "to 'hang on to it' " there followed this statement with reference to the vineyard: "you keep as long as *you* live, at the time of *your* death John (*you*) leave it to Ernest

Ferduns family." The reasoning of this California case demonstrates to my mind that the language of the will we are considering is words of limitation.

It must be kept in mind that the testatrix directed that her property should be (1) cared for and (2) disposed of. How? "* * * according to my personal directions to her." The majority opinion holds that these words under consideration were precatory and say "In order to ingraft a trust upon this will we would have to assume that any 'directions' that may have been given to the devisee by the testatrix were 'imperative' in their nature." I understand from this statement that if the given directions, if any, were imperative that a trust was created. I am not going to delve in the realm of conjecture, but am trying to limit my endeavor to the will itself. I am not prepared to give the word "directions", when used in connection with a directive disposing of property, "the nonnatural meaning of recommendations carrying with them no obligation." Magnus v. Magnus, 80 N.J.Eq. 346, 84 A. 705, 706. Even precatory words become imperative "* * * if it appears that they were intended to create an obligation * * *." Wemme v. First Church of Christ, Scientist, 110 Or. 179, 219 P. 618, 627, 223 P. 250).

"The basic principle in the construction of precatory expressions is well stated by a distinguished judge. 'The primary question in every case is the intention of the testator, and whether in the use of precatory words he meant merely to advise or influence the discretion of the devisee, or himself to control or direct the disposition intended' * * * *". 1 Bogert on Trusts & Trustees, § 48, page 224.

On the general subject of wills and particularly on their construction, judges as a whole have great respect for the opinions of the Court of Chancery of New Jersey and it is with more than a little satisfaction that I am able to cite a case from that court where the disposing clause under consideration is astonishingly like the clause here under review. The clause reads: "* * * I give the same (residue) to my niece Clara Seidensticker to dispose of in accordance with my instructions to her. * * *" Magnus v. Magnus, supra. The court held that a trust had been created; that there was no uncertainty of an intent to create a trust, but that the trust failed for uncertainty as to the objects to be benefited; and, that the next of kin took the residue.

Having concluded that the bequest to Sarah McGill was in trust, without declaration of beneficiaries on the face of the will, it follows that it is no bequest at all so far as the beneficial interest is concerned, since it shows an intention that it should not vest in Sarah, and does not declare in whom it shall vest. In this situation the laws vest it in the heirs of the testatrix. 26 C.J.S., Descent and Distribution, § 43; Home Ins. Co. v. Latimer, 33

Ariz. 288, 264 P. 103; Stephens v. Comstock-Dexter Mines, Inc., 54 Ariz. 519, 97 P.2d 202; MacKenzie v. Wright, 31 Ariz. 272, 252 P. 521; Ray v. Fowler, Tex.Civ. App. 1940, 144 S.W.2d 665.

The judgment should be reversed with directions to enter judgment invalidating the testamentary disposition attempted for the reasons heretofore assigned.

J. MERCER JOHNSON, Superior Court Judge, concurs.

NOTE. Justice PHELPS having presided at the trial of this cause, the Honorable J. MERCER JOHNSON, Judge of the Superior Court of Pima County, was called to sit in his stead.