IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of the Estate of:

LUCILLE F. SIBLEY, Decedent.

JOHN S. MASHLER, et al., *Petitioners/Appellees*,

*v.*

ERNEST F. MASHLER, *Respondent/Appellant*.

No. 1 CA-CV 17-0369
FILED 7-26-18

Appeal from the Superior Court in Yuma County
No. S1400PB201500108
The Honorable Roger A. Nelson, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Jaburg & Wilk, P.C., Phoenix
By Kathi M. Sandweiss, Roger L. Cohen
*Co-Counsel for Petitioners/Appellees*

Deason Garner Law Firm, Yuma
By Adam D. Hansen
*Co-Counsel for Petitioners/Appellees*

Dickinson Wright, PLLC, Phoenix
By Michael J. Plati
*Counsel for Respondent/Appellant*

---

**OPINION**

---

Presiding Judge Lawrence F. Winthrop delivered the opinion of the Court, in which Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

---

**W I N T H R O P**, Presiding Judge:

**¶1**　　　　Ernest F. Mashler ("Ernest") appeals from the superior court's judgment denying his petition to partition certain real property ("Farmland") and approving the restatement of his mother's trust.

**¶2**　　　　We address in this opinion whether precatory language in a will directed to a personal representative or executor rather than devisees creates an enforceable instruction. We hold that, read with the other provisions of a will, precatory language may create an enforceable directive rather than a discretionary request. Additionally, we conclude that the trial court erred in approving a restatement of the decedent's trust, permitting the trustees to "decant" an otherwise irrevocable trust. We hold that, pursuant to Arizona Revised Statutes ("A.R.S.") section 14-10819(A)[1], a trustee has discretion to decant—the authority to appoint or distribute trust property to a new or different existing trust with terms that differ from those of the original trust—only when the trust instrument expressly provides.

**¶3**　　　　Accordingly, we affirm the court's denial of Ernest's petition to partition the Farmland but vacate the court's order approving restatement of the trust.

## FACTS AND PROCEDURAL HISTORY

**¶4**　　　　In 1986, Lucille F. Sibley ("Lucille") and her husband, Phillip R. Sibley ("Phil"), created the Phil R. Sibley & Lucille F. Sibley Trust (the "Trust"), which became irrevocable upon their deaths. Lucille and Phil had one child together, Patricia Sibley Knott, and Lucille had three children by

---

[1]　　　We cite the current versions of all applicable statutes as no revisions material to this opinion have since occurred.

a prior marriage, Ernest, Christine Wolleson ("Christine"), and John Mashler ("John").[2]

¶5            When Phil died in 2004, Lucille's separate property and her share of the community property were allocated to "Trust A." When Lucille died in 2015, the Trust directed that the remaining principal and income of Trust A be distributed pursuant to the terms of Lucille's Last Will and Testament (the "Will").

¶6            The Will directed that:

> **[A]ll liquid assets of Trust "A"** shall be divided into three equal shares and distributed free of trust to: [Ernest, Christine, and John,] or their issue per stirpes. **It is my desire that the real property ([F]armland)** which is part of Trust "A" . . . be held in further trust and that the income of such [F]armland, after the payment of expenses to keep it in trust, be divided equally among [Ernest, Christine, and John,] or their issue per stirpes. Unless required to satisfy the administration of my estate . . . **I desire that the [F]armland not be sold until my youngest great-grandchild reaches the age of twenty-one**. At such time, the proceeds of which would be distributed equally to [Ernest, Christine, and John,] or their issue per stirpes.

(Emphasis added.)

¶7            Upon Lucille's death, John applied to superior court for the informal probate of the Will and appointment of a personal representative. The court appointed John as personal representative. John and Christine were the remaining co-trustees of the Trust.

¶8            Approximately one year later, John petitioned the superior court to approve the exercise of his and Christine's power, pursuant to A.R.S. § 14-10819, to restate the terms of the Trust. He asserted that the Trust "was outdated and lacked modern administrative provisions." Christine later joined the action. Ernest objected to their petition and filed his own petition seeking to partition the Farmland.

¶9            After a hearing on both petitions, the superior court entered a judgment (1) denying Ernest's petition to partition the Farmland and (2) approving John and Christine's restatement of the Trust. Ernest timely

---

[2]        Patricia Sibley Knott is not a party to this appeal.

appealed from the judgment, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 12-120.21(A)(1), and -2101(A)(9).

## ANALYSIS

### I. *Statute of Limitations*

**¶10**       As a preliminary matter, John and Christine argue that Ernest was barred from contesting the validity of the Trust by A.R.S. § 14-10604(A). That statute provides, in relevant part, that "[a] person may commence a judicial proceeding to contest the validity of a trust **that was revocable at the settlor's death** within . . . [o]ne year after the settlor's death."  A.R.S. § 14-10604(A)(1) (emphasis added).  Here, the Trust became irrevocable upon Phil's and Lucille's deaths.  Therefore, § 14–10604, which applies to revocable trusts, did not preclude Ernest from contesting the validity of the Trust.

**¶11**       John and Christine additionally argue that A.R.S. § 14-3306 also prohibits Ernest from contesting the Trust.  Section 14-3306 prohibits an heir "from commencing a formal testacy proceeding to contest the probate of the will after four months have elapsed" following receipt of information regarding informal probate of a will.  A.R.S. § 14-3306(B).  John and Christine's brief, however, fails to explain how this statute applies to bar Ernest's petition to partition the Farmland or his objection to John and Christine's petition to restate the Trust.  *See* ARCAP 13(a)(7) (requiring "supporting reasons for each contention" with citations to legal authorities).  Accordingly, they have waived this argument on appeal.  *See Polanco v. Indus. Comm'n*, 214 Ariz. 489, 491 n.2, ¶ 6 (App. 2007) (explaining that a party who fails to develop and support an argument waives that issue on appeal).  Further, Ernest did not commence a formal testacy proceeding to contest the probate of the Will; simply stated, § 14-3306 does not apply.

### II. *Construction of the Will*

**¶12**       In appealing the denial of his motion to partition the Farmland, Ernest first argues the superior court improperly interpreted the Will "as directing that the Farmland be held in trust."

**¶13**       The "cardinal rule" of will construction is to ascertain the intent of the testator from the words of the will.  *See Newhall v. McGill*, 69 Ariz. 259, 262 (1949).  On appeal, we review any legal issues raised *de novo*, and apply "the appropriate legal standard to the facts found" by the superior court.  *In re Estate of Shumway*, 198 Ariz. 323, 326, ¶ 9 (2000).  "[W]e

do not reweigh conflicting evidence" but rather "examine the record only to determine whether substantial evidence exists" to support the court's ruling. *In re Estate of Pouser*, 193 Ariz. 574, 579, ¶ 13 (1999).

**¶14** Lucille's intent regarding the disposition of her "liquid assets" is easily ascertained from the language of the Will. She stated that the assets "shall be divided into three equal shares and distributed free of trust" to Ernest, Christine, and John. Her intent regarding the Farmland was expressed differently. She indicated that it was her "desire" that the Farmland "be held in further trust and that the income of such [F]armland, after the payment of expenses to keep it in trust, be divided equally among" Ernest, Christine, and John. She further expressed her "desire" that the Farmland not be sold until her youngest great-grandchild turned twenty-one.

**¶15** The phrase "I desire" is "precatory," which means "requesting, recommending, or expressing a desire rather than a command." *Precatory*, Black's Law Dictionary (10th ed. 2014). A precatory trust is "[a] trust that the law will recognize to carry out the wishes of the testator or grantor even though the statement in question is in the nature of an entreaty or recommendation rather than a command." *Precatory trust*, Black's Law Dictionary (10th ed. 2014). The issue we must resolve is whether Lucille's words placed the Farmland in the Trust.

**¶16** More than seventy-seven years ago, the Arizona Supreme Court addressed the effect of precatory language in a will. The court interpreted a will that provided:

> It is my wish, though this is not a restriction or a limitation upon the use and enjoyment of the legacies and bequests herein made, that my estate, after the payment of my debts, the cash bequests and expenses of administration, shall be kept among the descendants of my late father and mother.

*In re Hayward's Estate*, 57 Ariz. 51, 58 (1941). Our supreme court concluded that this language constituted "a recommendation or request directed to legatees and devisees" rather than a command. *Id.* at 60. In reaching this conclusion, however, the court acknowledged "many cases" in which precatory language is properly "construed as dispositive." *Id.* at 58. The court cited with approval a California case holding that "[w]here the words are used to describe a disposition of property, that is, where they are directed to the executor or to the law, and not to a devisee or legatee, the authorities are uniform that the word ['desire'] is sufficient to declare a

disposition of the property." *Id.* at 59 (quoting *In re Tooley's Estate*, 149 P. 574, 575 (Cal. 1915)).

¶17 Several years later in *Newhall v. McGill*, our supreme court explained how a court should determine whether precatory language creates a trust:

> [I]n order that a trust may arise from the use of precatory words, the court must be satisfied, from the words themselves, taken in connection with all the other terms of the disposition, that the testator's intention to create an express trust was as full, complete, settled, and sure as though he had given the property to hold upon a trust declared in the ordinary manner.

69 Ariz. at 263 (citing *Fields v. Fields*, 3 P.2d 771, 773-74 (Or. 1931)); *see In re Conness' Estate*, 73 Ariz. 216, 218-19 (1952) (concluding that "for the education of" was a precatory phrase that did not create a trust, but was instead "only an expression of a wish or desire on the part of the testator to the legatees as to how they should use the bequest"); *see also In re Rowlands' Estate*, 73 Ariz. 337, 340 (1952) ("Precatory words directed to an executor indicate a trust while the same words to a devisee do not") (citing *Newhall*, 69 Ariz. 259).[3]

¶18 After carefully reading the language of the Will, we conclude that the evidence supports the superior court's finding that, Lucille's words regarding the disposition of the Farmland, examined with the other terms of the Will, reflect her intent to hold the Farmland in further trust. Her words "it is my desire" are not directed to her devisees but to the personal representative of her estate. Unlike the testator in *Hayward's Estate*, Lucille did not include qualifying language stating that her desire should not be construed as "a restriction or limitation." And, most importantly, the Will reflects Lucille's intent to dispose of her "liquid assets" separately and differently from the Farmland. She expressly directed that her liquid assets be distributed "free of trust." If Lucille wanted the same disposition for the

---

[3] The Missouri Court of Appeals recently articulated the rule set forth in *Newhall*. *See Day v. Hupp*, 528 S.W.3d 400, 414 (Mo. Ct. App. 2017) (reasoning that a trust will arise from the use of precatory words only if the court is "satisfied from the words themselves, considered in connection with all the other terms of the disposition, that the grantor's intention to create a trust was as complete and certain as if she had given the property to hold in a trust declared in the ordinary manner").

Farmland, she would have so stated. Instead, she addressed the Farmland separately and expressed her will that it be held in "further trust."

¶19 On appeal, Ernest argues that the superior court's ruling contradicts the testimony of Stephen Shadle, the attorney who drafted the Will. Although it is true that Shadle testified that the word "desire" was precatory and not obligatory, his testimony was contradicted by a letter he sent following Lucille's death that stated, "I think the time for closing the Trust and selling is about ten years out," and that he needed "to get great grandchildren birth dates nailed down to get the exact date." The letter suggests Shadle's pre-litigation understanding that the Farmland should be held in "further trust." It is not for this Court to reweigh conflicting evidence. *See In re Estate of Pouser*, 193 Ariz. at 579, ¶ 13.

¶20 We conclude that the language of the Will supports the superior court's finding that Lucille intended the Farmland to be held in trust until her youngest great-grandchild, alive at the time of Lucille's death, reaches the age of twenty-one. Accordingly, we affirm the court's denial of Ernest's petition to partition the Farmland.[4]

### III. *Restatement of the Trust*

¶21 Ernest next argues that the superior court erred in approving John and Christine's restatement of the Trust pursuant to A.R.S. § 14-10819. He asserts that the power to appoint under § 14-10819 arises only when "the trustee has 'discretion' with respect to trust asset or income distributions," and that the Trust here did not provide such discretion. We agree.

¶22 Section 14-10819 provides, in part:

> Unless the terms of the trust instrument expressly provide otherwise, **a trustee who has the discretion under the terms of a testamentary instrument or irrevocable inter vivos agreement to make distributions**, regardless of whether a

---

[4] Ernest's petition also asserted that Lucille's testamentary power of appointment violated the rule against perpetuities set forth in A.R.S. § 14-2901(A), because she directed that the Farmland not be sold until her youngest great-grandchild reached the age of twenty-one. The superior court found that the language of the Will could "be construed to apply to the youngest great-grandchild then living at the time of Lucille's death." Ernest has not challenged this ruling on appeal. Accordingly, we do not review the superior court's finding.

standard is provided in the trust instrument to or **for the benefit of a beneficiary** of the trust, may exercise without prior court approval the trustee's discretion by appointing part or all of the trust property in favor of a trustee of another trust.

A.R.S. § 14-10819(A) (emphasis added).

**¶23**        Section 14-10819(A) grants a trustee the power to "decant" an irrevocable trust under certain conditions. As explained by the Uniform Law Commission, decanting refers to "the distribution of assets from one trust into a second trust, like wine is decanted from the bottle to another vessel."[5] A trustee with decanting power has "authority to amend an unamendable trust, in the sense that he or she may distribute the trust property to a second trust with terms that differ from those of the original trust." *Morse v. Kraft*, 992 N.E.2d 1021, 1024 (Mass. 2013) (citation omitted).

**¶24**        The rationale behind decanting is that "if a trustee has discretion to distribute trust property to or for the benefit of a beneficiary, the trustee in effect has a limited power of appointment in favor of the beneficiary and thereby can appoint the property to a new or existing trust for the benefit of that beneficiary." Alan S. Halperin, Zoey F. Orol, *Modern Variations on an Ancient Theme: Fundamental Changes in Trust Law-Part II*, N.Y. St. B.J. 25, 26 (March/April 2017). Thus, it is a trustee's discretionary authority to make distributions in favor of a beneficiary that provides the premise for decanting. *See* William R. Culp, Jr., Briani Bennett Mellen, *Trust Decanting: An Overview and Introduction to Creative Planning Opportunities*, 45 Real Prop. Tr. & Est. L.J. 1 37-38 (2010). Based on this rationale, Arizona's statute, like those of other states, requires that a trustee have the power to make discretionary distributions for the benefit of a beneficiary under the terms of the original trust. *See* A.R.S. § 14-10819(A); *see also Ferri v. Powell-Ferri*, 72 N.E.3d 541, 553-54 n.12 (Mass. 2017) (citing decanting statutes from twenty-seven states).[6]

---

[5]        *The Uniform Trust Decanting Act, A Summary*, http://www.uniformlaws.org/shared/docs/trustdecanting/UTDA%20-%20Summary.pdf

[6]        The Uniform Trust Decanting Act likewise authorizes decanting only when the trust confers discretionary distribution powers. *See* UNIFORM TRUST DECANTING ACT, §§ 11, 12 (UNIF. LAW COMM'N 2015).

¶25        We have reviewed the Trust here and find no evidence that John and Christine, as trustees, have discretion to make distributions for the benefit of the beneficiaries, who include themselves. Prior to Lucille's death, the trustees had discretion to distribute principal for the benefit of Lucille's "maintenance, support, health and well being." Upon Lucille's death, the trustees had discretion to draw upon the principal to cover any funeral expenses and death taxes. However, the Trust provides no authority for the trustees to make discretionary distributions for the benefit of the beneficiaries following Lucille's death.

¶26        John and Christine cite Article IV(B) of the Trust, which provides that, upon Lucille's death, the trustees:

> [S]hall distribute the then remaining principal and undistributed income to or hold the same for the benefit of such person or persons or the estate of [Lucille] in such amounts and proportions, for such estates and interests, and outright, or upon such terms, trusts, conditions and limitations as [Lucille] shall appoint by a Will referring specifically to this power of appointment.

This provision directs John and Christine to distribute or hold the Trust principal and income in compliance with Lucille's Will. It does not grant John and Christine discretion over the distribution of principal or income.

¶27        Alternatively, John and Christine argue "that the discretionary power need not come directly from the testamentary instruments themselves." We disagree. Section 14-10819 expressly requires that the trustee's discretion come from "the terms of a testamentary instrument or irrevocable inter vivos agreement." A.R.S. § 14-10819(A).

¶28        Because the Trust does not grant John and Christine the discretion to make distributions for the benefit of the beneficiaries, they did not have the authority to restate the Trust pursuant to § 14-10819. Accordingly, we vacate that portion of the superior court's judgment. The original Trust remains in effect. If the parties wish to modify the Trust going forward, they must follow the appropriate statutory procedure. *See* A.R.S. § 14-10410.

IV.    *Attorneys' Fees*

¶29        John and Christine request an award of attorneys' fees on appeal pursuant to A.R.S. § 14-11004, which provides:

    A. A trustee . . . is entitled to reimbursement from the trust for that person's reasonable fees, expenses and disbursement, including attorney fees and costs, that arise out of and that relate to the good faith defense or prosecution of a judicial . . . proceeding involving the administration of the trust, regardless of whether the defense or prosecution is successful.

    B. A court . . . may order that a party's reasonable fees, expenses and disbursements pursuant to subsection A be paid by any other party or the trust that is the subject of the judicial proceeding.

A.R.S. § 14-11004. We grant John and Christine's request for an award of reasonable attorneys' fees and costs on appeal to be paid by the Trust pursuant to § 14-11004(A) but deny their request for fees against Ernest personally pursuant to § 14-11004(B).

## CONCLUSION

¶30       For the foregoing reasons, we affirm the superior court's denial of Ernest's petition to partition the Farmland but vacate the court's approval of the restated trust. We award John and Christine their reasonable attorneys' fees and costs on appeal upon their timely compliance with Arizona Rule of Civil Appellate Procedure 21.

